*In re* MARRIAGE OF SHIRLEY A. FRYER, Petitioner-Appellant, and ROBERT E. FRYER, Respondent-Appellee.

Fourth District    No. 15700

Opinion filed September 15, 1980.

CRAVEN, J., dissenting.

Burt Greaves, of Greaves, Lerner & Gadau, of Champaign, for appellant.

Robert J. Waaler and Sarah B. Tinney, both of Waaler, Evans & Gordon, of Champaign, for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal presents yet another aspect of the developing theory, and application of that theory, of sections 503 and 505 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, pars. 503 and 505) (herinafter Act).

The marriage of the parties was dissolved and no questions are raised concerning this part of the proceeding. Thereafter the trial court held a hearing on the disposition of their property and entered an order of division. Subsequently the petitioner filed a petition for reconsideration in which she alleged that the trial court did not consider the relevant factors set forth in section 503(c) of the Act.

The trial court also awarded child support to the petitioner from the respondent. The petition for reconsideration further alleged that the award was not based on the relevant factors set forth in section 505(a) of the Act.

In denying the petition the trial court said: "* * * I considered all the indications therein. * * * I took into consideration what the statute said had to be taken into consideration."

Three basic questions are thus presented by petitioner's appeal: (1) the proper standard to be applied by the trial court in making a division of marital property; (2) the proper standard of review of the trial court's application; and (3) the proper articulation by the trial court of its application.

In making the division of property the trial court first set off to petitioner certain nonmarital property, one half of the parties' checking account balance and credit union balance on the date of separation, together with household goods, two automobiles and other chattels, none of which is the subject of this appeal. In the same manner the court set off to respondent certain automobiles, tools, other chattels, and the remaining half of the checking and credit union accounts. None of these items is the subject of this appeal.

Three items constitute the major controversy between the parties. First is the marital home, which had an agreed value of $60,000 but subject to a mortgage of $12,000. Exclusive use of the home was awarded to petitioner until the last child of the parties reached age 20 or became emancipated. There were two children of the marriage, ages 14 and 16 at

the time of the order of dissolution. Petitioner was required to make the mortgage payments during her possession of the premises. Upon the conditions being fulfilled regarding the children, each of the parties had the option to buy the other's equity, but if none of the options were exercised, then the home was ordered sold and the net proceeds divided 60% to petitioner and 40% to respondent.

The second item concerns the pension contributions of the respondent. He had been an employee of the University of Illinois for 26 years and had contributed approximately $20,000 to his retirement fund. Since the marriage was of 20 years' duration, approximately 77%, or $15,400 was marital property. The trial court awarded the entire pension fund to the respondent and indicated that he was adjusting the division of the marital home in an effort to equalize between the parties. The petitioner was awarded her pension fund which was estimated at about $1,200. She, too, was an employee of the University of Illinois.

The third item in controversy involves certain sums paid to petitioner by respondent during their separation and a sum saved by respondent during the separation and awarded to him by the trial court. There was evidence that respondent had paid approximately $7,000 to petitioner and the trial court gave him approximately $3,400 which he had saved.

Petitioner claims that the foregoing demonstrates a gross disparity in the disposition of the marital property and that the court should award her the entire equity in the marital home together with the $3,400 given to respondent as savings during separation. We disagree.

Even a cursory examination of the foregoing figures demonstrates that the trial court achieved as nearly an equal division as possible. Respondent received 40% of the $48,000 equity in the home, or $19,200. He also received 77% of his pension contributions, or $15,400 although there was no evidence that the pension contributions had any present value. His total, then, is $34,600.

Petitioner received 60% of the equity, or $28,000. She also received her pension fund of $1,200. Since there was no judgment of legal separation in force at the time of either the $7,000 payments to petitioner or the $3,400 savings by respondent, they may be considered marital property of which petitioner received an overplus of $3,600. Her total, then, is $33,600.

In terms of cash flow, it appears that the trial court also reached an equal division. Respondent's affidavits reveal a monthly net income of $733; petitioner's affidavits show a monthly net income of $483. Petitioner was awarded $220 per month child support. Respondent's cash flow then becomes $513 and petitioner's cash flow becomes $703. Petitioner is required to make the mortgage payment of $190, leaving her $513, the same amount as respondent. However, after payment of the monthly mortgage installment, petitioner is rent-free; the same is not true of respondent. From

the balance of the affidavits, it seems clear that neither party can meet claimed expenses. However, we believe that the trial court struck a reasonable balance under the circumstances.

The standard to be applied by the trial court was recently stated by this court in *In re Marriage of McMahon* (1980), 82 Ill. App. 3d 1126, 403 N.E.2d 730. The majority stated that the trial court was required to consider "all relevant factors, including *inter alia*" the 10 items set forth in section 503(c) of the Act. The majority did not say that the 10 factors were exclusive. Mr. Justice Craven, in his dissent, indicated his belief that the 10 factors were exclusive and unless factual findings appeared in the record as to each of them, there had occurred reversible error by the trial court.

■■ We adhere to the precedent of *McMahon*. To do otherwise would require the trial courts to conduct an audit of the financial and property affairs of the litigants before them. This would create an impossible burden. The 1978 Annual Report to the Supreme Court of Illinois by the Administrative Office of the Illinois Courts indicates that statewide 67,212 divorce matters were disposed of by the circuit courts in that year. Later statistics have not yet been published, but even without any increase in case load we do not believe that the legislature intended any such onus on the trial courts by enacting section 503(c).

Instead, we believe that section 503(c) sets what Mr. Justice Trapp in his special concurrence in *McMahon* calls the "rationale" of the statute. We note that the first item in section 503(c) emphasizes the contribution of a spouse as a homemaker. The analogy to a commercial partnership is plain. There is no specific requirement that the court make an equal division of the property as a starting point, although by the same token there is no prohibition against it. If, as in the case at bar, the trial court arrives at a substantially equal division, we believe that the rationale of the statute has been satisfied. An unequal division (compare *McMahon*) would depend on other "relevant factors."

■■ The result then is that if an examination of the entire record reveals that the trial court was aware of the requirements of section 503(c) and if further examination of the entire record reveals that the trial court arrived at an ultimate disposition in harmony with the rationale of the statute, no abuse of discretion has occurred. On review, the same standard must apply: not whether the trial court has, robot-like, applied a series of legal-litmus tests, but whether the result achieved meets the rationale of the statute. If not, it may then be said that an abuse of discretion has occurred. Likewise, if a trial court should state positively that it is disregarding one or all of the items set forth in section 503(c), or if it should appear from the record that the trial court based its decision in whole or in part on an irrelevant factor (*e.g.*, the cupidity of one of the parties), it may then be said that an abuse of discretion has occurred.

None of this can be reduced to an algebraic equation, and for the very reason that no two cases are alike. The statute may raise some parameters where none existed before, but they are parameters, not perimeters. Unless the whole field of domestic relations is to be reduced to a mindless, computerized procedure, trial judges must be allowed a generous range of responsibility and watchfulness.

■■ As to the method of articulating their findings, we would prefer that trial judges adopt language which would briefly indicate clearly their compliance with 503(c). Generalized statements, such as appear in this record and recited above, are of little assistance to this court in its reviewing responsibility. However, in the case at bar the petition for rehearing was couched in equally generalized terms and did not specify with any particularity where petitioner felt that 503(c) had not been complied with.

■■ All that we have said concerning section 503(c) applies with equal force to section 505(a) which is also involved in this appeal. The same considerations apply.

We are of the opinion that in making its division of marital property and in providing for child support the circuit court of Champaign County did not abuse its discretion and made its decisions in compliance with the rationale of the statute. Its order is therefore affirmed.

Affirmed.

TRAPP, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

It is unfortunate that the majority opinion in this case adds but another layer to the diverse views with reference to compliance with the statutory mandates for division of marital property. It is even more unfortunate that the majority opinion is internally inconsistent and self-contradictory.

At one point the opinion notes that if "the trial court arrives at a substantially equal division, we believe that the rationale of the statute has been satisfied. * * * [I]f further examination of the entire record reveals that the trial court arrived at an ultimate disposition in harmony with the rationale of the statute, *no abuse of discretion* has occurred." (Emphasis added.)

It is further to be regretted that the majority opinion adheres to the view set forth in *McMahon* and then says that the trial court was required to consider all relevant factors enumerated in the statute. I am unable to understand the observation that those 10 statutory criteria are not necessarily exclusive. Indeed, I think I am permitted to ask whether that observation means that the list is endless, limited only by further judicial legislation.

The law with reference to the distribution of property upon dissolution of marriage has been drastically changed and we may as well accept the change and comply with the statutory mandate. That statutory scheme is the sole basis for the exercise of judicial power with reference to distribution of property. Neither this court nor the trial court has any inherent power to deal with other people's property. We have to follow the statute, and from this record it is not ascertainable that there was consideration of the statutory criteria for division of property. Thus, for the reasons set forth in my dissent in *McMahon*, I dissent here.