*In re* MARRIAGE OF STANLEY ROTHBARDT, Petitioner-Appellee, and MARLENE ROTHBARDT, Respondent-Appellant.

First District (2nd Division)    No. 81-484

Opinion filed August 18, 1981.

Eugene Lieberman, of Chicago, for appellant.

Marc K. Schwartz, of Batler & Capitel, of Buffalo Grove, for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

The parties to this appeal, Marlene Rothbardt (hereinafter Marlene) and Stanley Rothbardt (hereinafter Stanley), were married on August 27, 1966. The marriage was dissolved on December 24, 1980, by order of the circuit court of Cook County. Marlene was awarded custody of the parties' son and only child. No objection is made to the finding that the marriage should be dissolved, nor to the child custody award.

Marlene appeals from the January 29, 1981, supplemental judgment order. Specifically she contends: (1) that the trial court failed to consider her contribution as a homemaker; (2) that the court erred in awarding to Stanley shares of stocks classified as marital property without first making a finding as to the value of such stocks; (3) that the court erred in limiting to a period of nine months Marlene's maintenance award of $399 per month and expressly barring her from further maintenance; (4) that the court erred in awarding possession of the marital home to Marlene, without prior appraisal and conditioned on her payment to Stanley,

within two years, of a sum equal to 30 percent of the home's value, minus the outstanding mortgage balance; and (5) that the court disregarded the "dissipation" of marital funds by Stanley, resulting from his borrowing against the value of one life insurance policy and cashing in certain other life insurance policies.

For the reasons hereinafter stated, we reverse and remand for further proceedings.

## I

Marlene's first contention is that the trial court failed to consider her contribution to the marriage as a homemaker. The Illinois Marriage and Dissolution of Marriage Act requires that 10 factors be considered by the trial court in determining the apportionment of marital property. One of these factors is a spouse's contribution as a homemaker:

> "(c) In a proceeding for dissolution of marriage * * * the court shall * * * divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including:
>
> (1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, *including the contribution of a spouse as a homemaker or to the family unit*; * * *." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 40, par. 503(c)(1).[1]

Marlene testified at trial that from the date of her marriage in August 1966 until June of 1973 she worked full-time as a teacher. On January 21, 1972, the parties' son and only child, Carey, was born. Carey has an I.Q. of 70 and suffers multiple learning disabilities. Marlene claims that throughout the marriage she cooked meals for the family, cleaned the house, did the laundry, sewed, decorated, kept household books and made lunches for her husband. She also assisted her husband in his employment as a teacher, advising him on the preparation of visual aids,

---

[1] In addition to factor (1) quoted above, section 503(c) (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)) sets forth nine other factors:

"(2) the value of the property set apart to each spouse;

(3) the duration of the marriage;

(4) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;

(5) any obligations and rights arising from a prior marriage of either party;

(6) any antenuptial agreement of the parties;

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

(8) the custodial provisions for any children;

(9) whether the apportionment is in lieu of or in addition to maintenance; and

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income."

lesson plans and examinations and teaching him how to curve a grading scale.

During a colloquy with counsel for Marlene, the trial judge asked: "Are you talking about who did the cooking, cleaning, laundry, dusting? *I'm not even interested in that* * * *. I don't think it will have anything to do with how this case will be decided." (Emphasis added.) The judge later stated, "We have a situation here where, *forgetting about the contribution that the parties have made*, we have one asset that really has any value at all. That's the marital home." (Emphasis added.)

In apportioning marital assets, the trial court is statutorily mandated to consider each of the 10 factors set forth in section 503(c). Thus in the case of *In re Marriage of Fryer* (1980), 88 Ill. App. 3d 454, 457, 410 N.E.2d 596, the court stated:

> "The result then is that if an examination of the entire record reveals that the trial court was aware of the requirements of section 503(c) and * * * arrived at an ultimate disposition in harmony with the rationale of the statute, no abuse of discretion has occurred. * * * Likewise, *if a trial court should state positively that it is disregarding one or all of the items * * * an abuse of discretion has occurred.*" (Emphasis added.)

In *In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 37, 411 N.E.2d 238, the Illinois Supreme Court stated, "We note that the Act *expressly* directs the court to consider the contributions of a spouse as a homemaker." (Emphasis added.) See also *In re Marriage of Komnick* (1981), 84 Ill. 2d 89, 417 N.E.2d 1305.

■■ Since the trial judge in the instant case expressly stated that he was "not interested" in Marlene's contribution as a homemaker, we must conclude that an abuse of discretion has occurred.

## II

Marlene's second contention is that the trial court erred in allocating to Stanley all of the shares of stock owned in joint tenancy by the parties.[2] The trial court made no finding as to the value of the stock. Marlene argues that without evidence of the value of the stock, it was not possible for the trial court to divide the marital property in "just proportions" as required by the statute. Ill. Rev. Stat. 1979, ch. 40, par. 503(c).

While the distribution of marital property need not be mathematically equal and is a matter of discretion, the trial court is required to consider certain statutory factors in making the division. (*In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 412 N.E.2d 1336.) Among these

---

[2] In the supplemental judgment the trial court found "that any property of either party that was transferred into joint names is mutual property, the presumption being that said property was a gift and no evidence has overcome that presumption."

factors is the value of the property set apart to each spouse. (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)(2).) In the instant case the trial court awarded all of the furniture and furnishings in the marital home to Marlene. The furnishings were valued between $30,000 new and $5,000 used. The court awarded to Stanley all stocks and a 1976 Cutlass automobile valued at approximately $1,500. The trial judge, without determining the value of the stock, stated that he was setting off the value of the furniture against the value of the car and the stock.

■■ The trial court, in distributing marital property, is not required to make specific findings of fact as to the value of each item in dispute, nor is it always necessary for the court to set forth the facts on which an order is based. (*In re Marriage of Thompson* (1979), 79 Ill. App. 3d 310, 316, 398 N.E.2d 17.) In the case at bar, however, in the absence of evidence of the stock's value, a reviewing court cannot readily determine the reasonableness of the trial court's action in awarding the stock and the car to Stanley, supposedly offset by the award of furniture to Marlene. Thus, there is no basis in the record on which we can determine whether the trial court's award was a distribution in "just proportions." Accordingly, we find that the trial court erred in failing to value the stocks prior to allocating the marital property. See *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 636, 397 N.E.2d 488; *In re Marriage of Leon* (1980), 80 Ill. App. 3d 383, 399 N.E.2d 1006.

### III

Marlene's third contention is that the trial court erred in limiting her to nine months of maintenance and expressly barring her from further maintenance.

Whether a spouse is entitled to maintenance is a determination to be made by the trial court based on its consideration of all factors set forth in the statute. (*Petit v. Petit* (1980), 85 Ill. App. 3d 280, 406 N.E.2d 899.) The pertinent portion of the Marriage and Dissolution of Marriage Act is as follows:

"(a) In a proceeding for dissolution of marriage * * * the court may grant a maintenance order for either spouse, *only* if it finds that the spouse seeking maintenance:

(1) *lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, and*

(2) *is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home, or*

(3) *is otherwise without sufficient income.*" (Emphasis added.) Ill. Rev. Stat. 1979, ch. 40, par. 504.

■■ A trial court is generally encouraged to provide for a party's needs through property distribution rather than maintenance. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126; *Schubert v. Schubert* (1978), 66 Ill. App. 3d 29, 383 N.E.2d 266; *In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 411 N.E.2d 238.) Illinois courts have held that maintenance is appropriate *only* if the income from marital property apportioned to a party is insufficient to provide for his or her reasonable needs and that party is unable to support himself through appropriate employment or is otherwise without sufficient income. *In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 101, 393 N.E.2d 1065; *In re Marriage of Simmons* (1980), 87 Ill. App. 3d 651, 409 N.E.2d 321.

In the instant case the evidence discloses that Marlene has a Ph.D. in mathematics education, which she completed in 1976. She began law school in the same year and was graduated from I.I.T/Chicago-Kent College of Law, receiving a J.D. in January 1980. Before the dissolution proceedings concluded in December 1980, and prior to entry of the supplemental judgment, she had twice failed the Bar examination.[3]

Marlene has held no full-time employment since June 1973. During the first two years of her marriage she taught junior high school, earning a salary of approximately $5,400. She taught high school from 1968 to 1969, earning $9,200 and taught at Northeastern Illinois University during the next four years at a salary ranging from $10,600 to $11,800. During the three years following the birth of her son she worked part-time as a mathematics tutor earning a total of approximately $4,000.[4] Marlene suffers from Gaucher's disease, the symptoms of which she alleges are fatigue and frequent bleeding.[5]

In October 1973 Marlene filed a sex discrimination suit against Northeastern Illinois University. The Fair Employment Practices Commission found the university liable and awarded $89,000 to Marlene. At the time of the marriage dissolution hearing, an administrative review of the award was pending. The trial court in the dissolution proceeding noted that it was "conjectural" as to whether she would ultimately receive the $89,000. Following the close of the dissolution hearing, Marlene moved to reopen the proofs, requesting an opportunity to apprise the

---

[3] Marlene notes in her reply brief that she has failed the Bar examination for the third time.

[4] Marlene testified that she has not sought employment as a teacher since 1977 and has not sought a position utilizing her law degree since failing the Bar examination.

[5] The record does not disclose whether Gaucher's disease will limit the employment potential of a victim. Webster's Third New International Dictionary describes the disease as a rare chronic disorder, probably of genetic origin, characterized by enormous enlargement of the spleen, pigmentation of the skin and bone lesions. Large amounts of kerasin may be found in the cells of the reticuloendothelial system. The illness is also considered a form of anemia.

court that the award had been reversed on administrative review. The trial court denied Marlene's motion.[6]

Stanley has a bachelor's degree and an M.B.A. in marketing. He is employed as a field agent by the Internal Revenue Service, earning as of January 29, 1981, a net salary of $783.98 every two weeks. He also teaches on a part-time basis at Oakton Community College. In 1980 he earned $1,800 teaching two courses. Stanley is a named beneficiary of a trust fund created by his father. The trial court found, however, that it was questionable as to whether he would in fact receive money from the trust.[7]

The supplemental judgment ordered Stanley to pay Marlene $399 per month for a period of nine months "as and for permanent maintenance."[8] Marlene was expressly "barred from further maintenance."

In making the maintenance award, the trial court stated:

"I also take into consideration the fact that at the present time, [Marlene] is not working although I think she should be able to go out and get a job. I certainly hope that at the next Bar exam, she will pass it and be able to get a job somewhere as a lawyer.

Now as far as the future is concerned, [Stanley] has only a job to look forward to. She, I think has a greater future than he has if she passes the Bar exam or even if she doesn't and has to go somewhere and work with her degrees where she can do some good.

* * * what I am going to do is give her maintenance for the next nine months to give her an opportunity to go out and study and perhaps augment her income in some way besides the maintenance I am going to give her * * * *she should be able by that time to pass the Bar exam * * *.*"

Section 504(b) of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 504(b)) provides that once the court determines that maintenance should be awarded:

"(b) The maintenance order shall be in such amounts and *for such periods of time as the court deems just,* without regard to marital misconduct, *after consideration of all relevant factors,* including:

(1) *the financial resources of the party seeking maintenance,*

---

[6] We note from the trial court's repeated characterization of the $89,000 award as "conjectural" that the potential receipt of such award apparently did not influence the court's manner of apportioning the marital property. At the time of entry of the supplemental judgment, the award was not final. On oral argument this court was advised by counsel for Marlene that the administrative review decision reversing the award has been appealed.

[7] Stanley's mother is the principal beneficiary of the trust.

[8] Stanley has also been ordered to pay $421 per month in child support.

*including marital property apportioned to him, and his ability to meet his needs independently,* including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) *the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;*

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) *the age and the physical and emotional condition of both parties; and*

(6) *the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.*" (Emphasis added.)

Marlene has argued that the trial court erred in limiting her maintenance award to nine months and barring her from further maintenance. With regard to the first part of Marlene's contention, we note that limited awards have been upheld in cases in which the award was intended to maintain a party for a period during which such party's income-producing potential might be fully realized. See *In re Marriage of Rogers* (1980), 86 Ill. App. 3d 904, 408 N.E.2d 448, *aff'd* (1981), 85 Ill. 2d 217, 422 N.E.2d 635; *In re Marriage of Bentley* (1980), 82 Ill. App. 3d 25, 401 N.E.2d 1085.

It seems clear from the record that the trial court's limitation of the maintenance award to a nine-month period was predicated on the assumption that by the end of such period Marlene would have passed the Bar exam and would be able to support herself. The trial court also noted that "even if she doesn't [pass the Bar exam] and has to go somewhere and work with her degrees," she would be able to obtain a job and maintain herself.

■■ The Illinois Marriage and Dissolution of Marriage Act creates an affirmative obligation on the part of the spouse seeking maintenance to seek appropriate employment. (Ill. Ann. Stat., ch. 40, par. 504, Historical and Practice Notes, at 529 (Smith-Hurd 1980).) Marlene has earned a law degree and a Ph.D. in mathematics education, and these degrees may enable her to be employed by businesses other than those requiring her to have passed the Bar examination. Although she is the custodian of the parties' son, it is apparently not essential that she remain at home with him. During the trial she testified that her son had been placed in day-care facilities while she was pursuing her education. Based on the foregoing considerations, we cannot conclude that it was inherently an abuse of discretion for the trial court to limit Marlene to nine months of maintenance.

The second part of Marlene's argument is that the trial court erred in

expressly barring her from future maintenance. While the statute specifically empowers a trial judge to make awards of limited duration, such awards should not be based on speculation as to the future conditions of the parties. (*In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835, 845, 398 N.E.2d 868, citing *In re Marriage of Rosan* (1972), 24 Cal. App. 3d 885, 897, 101 Cal. Rptr. 295, 303-04.) By limiting the maintenance award to Marlene to a period of nine months with the additional proviso that she is "hereby barred from further maintenance," the trial court was in fact engaging in speculation that she will have attained self-sufficiency at the end of nine months. Although she is statutorily obligated to seek "appropriate" employment, there is no guarantee that by the end of the limited maintenance period she will have found such employment.

■■ Under the circumstances of this case, including Marlene's physical condition (Gaucher's disease), and the fact that since entry of the supplemental judgment she has again failed the Bar examination, we believe that justice would be better served by the trial court's retention of jurisdiction to review if necessary the needs of the parties at the end of the nine-month maintenance period.

## IV

Marlene's fourth contention is that, without prior appraisal, the trial court erred in awarding her only 70 percent of the value of the parties' equity in the marital home. She also maintains that it was error for the court to order her to pay an amount equal to 30 percent of such equity to Stanley within two years. Marlene argues that she will be forced to sell the home in order to pay such sum.

■■ The parties testified as to the value of the marital home, located at 6715 Kostner Avenue in Lincolnwood, Illinois. Marlene estimated that the current value of the home, purchased in 1971, was between $85,000 and $90,000. Stanley testified that he believed the home's value to be between $100,000 and $110,000. The trial court did not make a specific finding as to the value of the home but observed that it was probably worth between $85,000 and $110,000. It has been held that a trial court does not commit reversible error in failing to make a specific finding of fact as to the fair market value of the marital residence. (*In re Marriage of Thompson* (1979), 79 Ill. App. 3d 310, 316, 398 N.E.2d 17.) In view of the relatively modest differential in the parties' estimates as to the value of the home, it was not unreasonable for the trial court, without a specific appraisal, to adopt the range of value estimated by the parties.

Marlene further contends that she should be permitted to remain in the marital home until her son is of majority age and has completed his education. The child is presently attending an area school which provides necessary special education programs and furnishes bus transportation.

While courts have upheld similar arrangements (see *In re Marriage of Woolsey* (1980), 85 Ill. App. 3d 636, 406 N.E.2d 1142; *Schuppe v. Schuppe* (1979), 69 Ill. App. 3d 200, 387 N.E.2d 346), in the instant case the trial court noted that the marital home was the parties' principal asset, and as such, Stanley should be awarded a more immediate share in the property's value.

■■ In the supplemental judgment, the trial court noted that there was no partition action pending and concluded therefore that it could not order the marital residence to be sold and the proceeds divided. (See *In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835, 837-38, 398 N.E.2d 868, citing *Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 163-64, 356 N.E.2d 164.) Thus, the trial court awarded the marital home to Marlene, conditioned on her payment to Stanley within two years of an interest-free sum equal to 30 percent of the parties' equity in the home as appraised on the date of entry of the supplemental judgment. It is our opinion that the manner in which the trial court apportioned the marital home was not an abuse of discretion.

## V

Marlene's final contention is that in apportioning the marital property, the trial court disregarded Stanley's alleged dissipation of marital funds. (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)(1); *In re Marriage of Komnick* (1981), 84 Ill. 2d 89, 417 N.E.2d 1305.) We cannot agree.

The Marriage and Dissolution of Marriage Act mandates that the trial court consider each party's contribution to or dissipation of marital properties. The record reflects that Marlene gave $2,500 in marital bonds to her father in return for monies he loaned to her. There is also evidence that Stanley received $2,800 as a loan against a life insurance policy held with the Czechoslovak Society of America. In the supplemental judgment the court ordered Stanley to transfer ownership of this policy to Marlene and also ordered him to apply any cash dividends he had received on the policy to the loan and to reimburse Marlene for one-half of the unpaid loan balance.

The trial court also found that Stanley received $5,549.49 in cash surrender value from certain life insurance policies. In the supplemental judgment the court ordered him to maintain the insurance policies "in full force and effect and make the premium payments promptly as they become due * * * and * * * do no act to diminish or in any way impair the value of said policy of insurance."

■■ The record thus establishes that in distributing the marital property the trial court did not disregard the actions of Stanley which Marlene labels as a dissipation of marital funds.

The distribution of marital property in a marriage dissolution case is

within the discretion of the trial court, and such distribution will not be disturbed unless there has been a clear abuse of discretion. (*In re Marriage of Thornqvist* (1979), 79 Ill. App. 3d 791, 399 N.E.2d 176; *In re Marriage of McMahon* (1980), 82 Ill. App. 3d 1126, 403 N.E.2d 730.) Where it has been determined, however, that the trial court erred in failing to consider or to evaluate a significant marital asset, the trial court upon remand must review all property and support awards in order to determine if any reallocation of assets is necessary. See *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 637, 397 N.E.2d 448; *Schubert v. Schubert* (1978), 66 Ill. App. 3d 29, 383 N.E.2d 266.

■■ For the foregoing reasons, we reverse that part of the judgment of the trial court which failed to consider Marlene's contribution as a homemaker and which awarded to Stanley, without a prior finding of value, the shares of stock classified as marital property. In order to assure a distribution in "just proportions" as mandated by the statute, the trial court should review all interrelated property and support awards, including the maintenance award and the apportionment of the marital home.

Reversed in part and remanded.

STAMOS and DOWNING, JJ., concur.