*In re* MARRIAGE OF BARBARA PARTYKA, Petitioner-Appellant, and LEONARD PARTYKA, Respondent-Appellee.

First District (3rd Division)   No. 85—2139

Opinion filed June 3, 1987.—Rehearing denied August 12, 1987.

Carr & O'Rourke Associates, of Chicago (Donald A. Carr and Roland P. Ernst, of counsel), for appellant.

J. Roger Sewell, of Chicago, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Petitioner, Barbara Partyka, appeals from a judgment of dissolution of marriage entered by the circuit court of Cook County on December 17, 1984, and from a post-judgment order entered on June 21, 1985, which granted the motion of respondent, Leonard Partyka, to

strike her petition for rule to show cause with prejudice. Petitioner contends that her petition sought an arrearage in "support" of $8,575.40 pursuant to a temporary order of support entered on March 29, 1984. That order provided for respondent's payment of $100 per week in maintenance and child support and the expenses of the marital home, including the mortgage and utilities.

On appeal, petitioner contends: (1) the trial court abused its discretion in dividing the property because it did not take into consideration respondent's dissipation of $77,000 in. marital assets and the parties' relative opportunities to acquire future income and assets as it was required to under the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 503(d)); (2) the court erred in striking her post-judgment petition because past due installments of support become vested when due and a court is powerless to reduce or eliminate them. Petitioner maintains that an award of 58% of the marital property to respondent, excluding the parties' Barrister Equipment Account, which was either worth $25,000 or nothing, and the $77,000 allegedly dissipated by respondent, or an award of 69% of the marital property to respondent including the $77,000 in dissipated assets exceeds the bounds of reason and is not in just proportions as required under the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 503(d)), particularly in view of the fact that the petitioner was barred from seeking maintenance.

Respondent contends that the trial court did consider all of the factors enumerated in section 503 of the Act and that it awarded petitioner two-thirds of the marital property and respondent only one-third. To reach this conclusion, respondent contends, in effect, that the only marital assets awarded to him which had any value were the parties' Kerrigan Lewis stock, his Individual Retirement Account (IRA) and the parties' partial interest in one of two condominiums. Respondent ignores the value of his 1981 Cadillac automobile because it had a $12,000 encumbrance, the parties' Fidelity Fund Cash Reserve Account (Fidelity Fund) because it was allegedly exhausted by the parties' tax debts, and a debt due from Alex Solomon because it was allegedly uncollectable.

The following facts are relevant to this appeal. The parties were married in 1966 and two children were born during the marriage. Respondent received a bachelor's degree in 1968 and a master's degree in business administration in 1970. He worked at Dearborn Wire and Cable Company (Dearborn Wire) from 1972 to July 1983. From 1978 to 1983, respondent was vice-president of sales and marketing. Respondent earned $138,000 in 1982 and $110,000 in 1983 from Dear-

born Wire. He left that company in July 1983 to take a $40,000-per-year position with KSM Electronics. Petitioner received a bachelor's degree in art education in 1972. She did not work from 1968 to 1982 except for brief periods in 1974 and 1979 when she worked as a substitute teacher. In 1982, she obtained employment in the cosmetics department of Marshall Field's and worked there for approximately nine months. At the time of trial, petitioner was "on call" as a substitute teacher, for which she would be paid $44 per day.

The parties ceased living together as husband and wife on or near December 28, 1981, although respondent resided in the marital home from time to time thereafter. Petitioner filed a petition for legal separation on August 30, 1982, which ultimately was amended to a petition for dissolution of marriage on October 23, 1983. Respondent did not contest petitioner's grounds for dissolution and a bench trial regarding the property division commenced on October 21, 1983.

The trial court awarded petitioner: the marital home, which had an equity value of $95,000; a 1983 Pontiac automobile, which had been purchased with a down payment of $6,118 in marital assets; her jewelry and the household furnishings in her possession. The court awarded respondent: the Fidelity Fund, worth $47,189, out of which it first ordered that the parties' tax liabilities for 1982-83 and prior years be paid; the $34,781 proceeds of sale of the Kerrigan Lewis stock; his $11,926 IRA; the parties' interest in two condominiums; any monies to be received from the parties' Barrister Equipment Account; any monies to be received from Alex Solomon; a 1981 Cadillac automobile; his jewelry and the household furnishings in his possession. The court also awarded petitioner $130 per week in child support and barred the parties from seeking maintenance from each other.

Additionally, the evidence adduced at trial revealed the following. The parties' tax liabilities for the years 1981 through 1983 would be approximately $33,656 plus penalties. One of the condominiums owned in part by the parties was in foreclosure and the other was worth $7,000 to them. The Barrister Equipment Account had been purchased for $25,000 to provide the parties with a tax benefit for the years 1982 and 1983, but the parties disagreed whether the investment would have any value thereafter. Alex Solomon owed the parties $23,000 from a $40,000 business loan. The 1981 Cadillac automobile had been purchased with a trade-in of the parties' 1978 Toyota automobile, for which they received a $9,000 credit. No value was placed on the parties' jewelry or the household furnishings in their possession.

Section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 503(d)) provides:

"In a proceeding for dissolution of marriage *** the court *** shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including:

(1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit;
***

(3) the duration of the marriage;

(4) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;
* * *

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;
***

(9) whether the apportionment is in lieu of or in addition to maintenance

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income ***."

Petitioner initially contends the trial court abused its discretion by failing to take into account respondent's dissipation of approximately $77,000 in marital assets. She asserts that respondent failed to present clear and specific evidence as to how he spent a $5,000 payment from Alex Solomon on the loan to him, three $14,000 commission checks from Dearborn Wire, and $29,691.60 deposited in a savings account maintained in his name only. Respondent contends that he adequately accounted for all of these funds.

■■ ■ "Dissipation" is the use of marital property for one spouse's sole benefit or for a purpose unrelated to the marriage at a time when it is undergoing an irreconcilable breakdown. (*In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 462, 426 N.E.2d 1087.) Dissipation is possible even though it occurred prior to commencement of dissolution proceedings. (100 Ill. App. 3d 452, 462, 426 N.E.2d 1087.) Once it is established that one party has liquidated material assets, the party charged with dissipation must establish by

clear and specific evidence how the funds were spent; general and vague statements that they were spent on marital expenses or bills are inadequate to avoid a finding of dissipation. (*In re Marriage of Smith* (1984), 128 Ill. App. 3d 1017, 1022, 471 N.E.2d 1008.) Where a party has dissipated material assets, the court may charge the amount dissipated against his or her share of the marital property so as to compensate the other party. *In re Marriage of Block* (1982), 110 Ill. App. 3d 864, 870, 441 N.E.2d 1283.

■ On appeal, a property division can be disturbed only upon a showing of an abuse of discretion. (*In re Marriage of Rothbart* (1981), 99 Ill. App. 3d 561, 570-71, 425 N.E.2d 1146.) Such an abuse will be found where a court acts arbitrarily and without employing its conscientious judgment or where it exceeds the bounds of reason and ignores recognized principles of law so that substantial injustice results. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126.) That is, an abuse of discretion occurs where no reasonable person would take the view adopted by the trial court. (78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126.) However, a reviewing court is not justified in substituting its discretion for that of the trial court. *In re Marriage of Keller* (1982), 108 Ill. App. 3d 556, 559, 471 N.E.2d 1008.

■ Respondent testified he received the $5,000 payment from Solomon in December 1982. Although he stated that he gave this money to petitioner, he also stated he used this money himself and had not delivered it to petitioner. Moreover, respondent also testified as to this money: "I *think* I gave it to my wife." (Emphasis added.) Respondent also admitted that he "may have" stated in the presence of petitioner's attorney that he might have used this money for his own expenses. Petitioner denied having received this money from respondent. Thus, respondent failed to show by clear and specific evidence that he did not use this money for his sole benefit or for purposes unrelated to the marriage at a time when the marriage was undergoing an irreconcilable breakdown. As such, these funds should have been charged against his share of the marital property.

Respondent received one $14,000 commission check on October 28, 1982. Respondent testified he "paid a lot of bills with it" but did not know "specifically" what he did with this check. He also stated that he bought a cashier's check which he "may have" deposited into his savings account but admitted that the passbook did not reflect such a deposit. He then testified he believed part of the check went toward the purchase of a horse for the children. Respondent later testified that the account into which he deposited this check "could have been" and "probably" was the Fidelity Fund. Finally, respondent

stated that although he did not know where the money came from, either the Fidelity Fund or the parties' personal checking account, this check went to buy the Barrister Equipment Account and the horse.

The record further reveals that respondent confused this check with a $14,000 commission check which he claimed to have received in January 1983. Respondent had earlier testified that this January 1983 check was put into the Fidelity Fund to buy the Barrister Equipment Account. He also testified variously as to this check: (1) he either put it into the Fidelity Fund or "it went to buy Barrister's"; (2) he could not recall exactly where it went; (3) $12,500 "went to Barrister's" either through the Fidelity Fund or a cashier's check. However, a certified public accountant for Dearborn Wire who testified as to respondent's income from the company failed to identify any such check of January 1983.

Thus, the evidence with regard to this check reveals respondent's failure to demonstrate by clear and specific evidence how this check was spent and that he did not use it for his own benefit or for purposes unrelated to the marriage. As such, this check should also have been charged against his share of the marital property.

Respondent received the second $14,000 commission check on March 5, 1983. He testified he did not "believe" he told petitioner about this check and that "it was either put into [the] Fidelity [Fund] or went to pay Barrister's." After this check was produced by the accountant, it was shown to have been endorsed by respondent and a friend. Respondent then testified that he asked the friend to put the $11,500 into her checking account and give him the balance in cash. Respondent later admitted that he did not tell petitioner about the $11,500 because they were getting a divorce. Respondent did not account for the $2,500 balance of this check. In attempting to account for the $11,500 deposited with his friend, respondent could identify only $1,528.55 as having been spent on marital expenses. As such, the balance of this check, $12,471.45, should have been charged against respondent's share of the marital property.

Respondent received the third $14,000 commission check on July 1, 1983. Respondent testified that he asked another friend to endorse this check and give him the proceeds, which he used for his living expenses. Respondent admitted he took this money and used it for his own purposes and depleted it. Respondent later testified that the friend gave him $5,000 back immediately, which he used to "live on and pay the bills" until he began working for KSM Electronics. In attempting to account for the other $9,000, respondent testified to nu-

merous expenditures including: $2,500 to $3,500 deposited into his own checking account; use of the balance "to pay bills"; $3,920 spent on various marital expenses; $1,400 paid to Moylan and Early, attorneys; $2,000 spent on certain stock; $1,050 spent on household furnishings; $450 spent on repairs to his car; $200 on Christmas presents. After his recollection was exhausted, respondent produced a list which he stated represented the expenditures from the entire $14,000. From this list, respondent testified to additional expenditures amounting to at least $6,900. All but one of these expenditures were for respondent's sole benefit or purposes unrelated to the marriage.

To the extent that respondent testified this check was used for marital expenses or bills, his testimony was vague and general in nature. Respondent's testimony that he spent $5,000 to "live on and pay the bills" and that he spent $3,500 "to keep the marital home going" was inadequate to avoid a finding of dissipation. (*In re Marriage of Los* (1985), 136 Ill. App. 3d 26, 482 N.E.2d 1022.) In *In re Marriage of Los*, the dissipating party testified only that he used the funds for "his cost of living and his bills." The appellate court held that the failure to explain specifically how this money was spent required a finding of dissipation. (136 Ill. App. 3d 26, 33, 482 N.E.2d 1022.) Moreover, although respondent did testify to several specific expenditures for marital purposes, that he nonetheless failed to show by clear and specific evidence that he did not spend this money for his own benefit or purposes unrelated to the marriage is revealed by the fact that the expenditures to which he testified totalled far in excess of the entire $14,000 amount of this check. Respondent may have spent the $2,500 to $3,500 deposited in his checking account on other expenses to which he testified, including those for marital purposes. However, his failure to specify how these funds were spent results in a record reflecting that the expenditures from this $14,000 check totalled a minimum of $18,420. This is far from clear and specific as to how respondent spent this check and required the trial court to find that respondent had dissipated its proceeds.

Respondent's testimony also revealed that many of his expenditures were not for marital purposes. It is apparent from the record that at the time respondent received this commission check in July, 1983, he was not residing in the marital home but was maintaining an apartment in Barrington Lakes, Illinois. As such, the expenditures for household furnishings for this apartment were for a purpose unrelated to the marriage. (*In re Marriage of Smith* (1983), 114 Ill. App. 3d 47, 448 N.E.2d 554.) The $1,400 respondent paid to attorneys who repre-

sented him in negotiations to purchase Lentz Wire Company cannot be considered as having been made for a marital purpose. (114 Ill. App. 3d 47, 50-51, 448 N.E.2d 554.) Thus, respondent's testimony conclusively demonstrated that he spent funds from this check for his sole benefit or purposes unrelated to the marriage at a time when the marriage was undergoing an irreconcilable breakdown. This circumstance alone required the court to make a finding of dissipated funds and charge them against respondent's share of the marital property.

Respondent maintained a savings account in his own name from 1978 to the date of trial in which he deposited substantial amounts. He admitted he did not tell petitioner about this account until 1981. Petitioner contends that respondent deposited $5,601.80 from November 11, 1978, to December 28, 1981, and $24,090.80 from January 18, 1982, to October 10, 1983, into this account. We cannot agree. The record reveals that while petitioner's attorney asked respondent whether he had deposited these specific amounts into this account during the periods in question, respondent never stated he had done so. Rather, the only statements in the record to this effect are those of petitioner's attorney. However, we do note that respondent did testify to making individual deposits totalling $28,582.12 into this account. Moreover, respondent testified specifically to withdrawals from this account between 1982 and 1983 which totalled only $22,980.

We find that respondent established by clear and specific evidence that he spent only $10,277 of the $28,582.12 deposited in this account for marital expenses. These expenses were: $5,027 in withdrawals used for 11 car payments of $457 each; $1,000 spent on a trip to Aspen with petitioner; $1,100 spent on the parties' condominiums and Bartlett, Illinois, property; $1,100 spent on a Florida trip for the whole family; approximately $800 spent on a lawnmower and snowblower for the marital home; $150 spent on a therapist treating respondent at petitioner's request; $300 spent on school clothes for the children and $800 spent on the children's horse. With respect to $18,305.12, respondent's testimony either failed to address what one portion was spent on, explained only generally and vaguely that another portion was spent on marital bills, or established that the remaining portion was spent for his sole benefit or purposes unrelated to the marriage at a time when the marriage was undergoing an irreconcilable breakdown.

Respondent testified to making withdrawals for, *inter alia*, a total of nine payments for rent and a security deposit on an apartment at Barrington Lakes. Respondent earlier testified that he put the recovered security deposit for this apartment in the parties' joint checking

account. However, he later testified he "spent it" for unspecified purposes. Respondent also testified to making withdrawals for various other purposes such as "spending money," the purchase of certain household appliances and furnishings, "utilities," "cleaning," and trips on which he alone went. That these expenditures constituted the dissipation of marital assets cannot be gainsaid. (*In re Marriage of Smith* (1983), 114 Ill. App. 3d 47, 448 N.E.2d 545.) In *In re Marriage of Smith*, the husband withdrew $15,000 in marital assets from a credit union account and used it "for a *trip he took to Las Vegas,* for the payment of taxes and attorney fees, and for *the purchase of various household appliances and furniture for the apartment in which he lived after he ceased living with the family.*" (Emphasis added.) (114 Ill. App. 3d 47, 50, 448 N.E.2d 545.) The husband also admitted that he kept part of these funds and spent it himself. The court held that a finding of dissipation was not erroneous, stating, *inter alia:* "[r]espondent's testimony regarding his use of the funds was vague. The money spent on his trip to Las Vegas was obviously not money spent for a marital purpose." (114 Ill. App. 3d 47, 51, 448 N.E.2d 545.) Similarly here, the funds which respondent used to maintain and furnish the apartment in which he lived after he vacated the marital home, the funds which he used as "spending money" for unspecified purposes, and the funds which he used on the trips he took alone were obviously not spent for marital purposes. As such, they should have been charged against his share of the marital property by the trial court.

■ Petitioner also contends that the trial court abused its discretion in dividing the marital property as it did for the additional reason that it failed to take into consideration "the reasonable opportunity of each spouse for the future acquisition of capital assets and income." (Ill. Rev. Stat. 1983, ch. 40, par. 503(d)(10).) Petitioner contends that respondent has a far greater opportunity to accumulate assets and income in the future than she does given the relative disparity in their past employment and earnings and in the employment and income which each party had at the time the judgment of dissolution was entered.

We agree with petitioner that the trial court's distribution of the marital property was not a distribution of "just proportions considering all [the] relevant factors" as required under section 503(d) of the Act. (Ill. Rev. Stat. 1983, ch. 40, par. 503(d).) In addition to the dissipated assets, we do not believe the distribution of marital property adequately takes into account the parties' respective opportunities and abilities to accumulate future assets and income.

The evidence adduced at trial established that respondent's potential to accumulate assets and income can be expected to greatly exceed that of petitioner. Respondent has an advanced degree and has worked continuously since 1970, earning a yearly salary and commissions of as much as $138,000. Even at the time of trial, respondent was earning $40,000 per year. Petitioner, in contrast, had not worked since 1968 except for some temporary teaching and sales positions. Rather, she remained at home to raise the children. At the time of trial she was earning only $44 per day as a substitute teacher.

Thus, we believe the distribution of $101,118 in marital assets to petitioner and a minimum of $99,207 to respondent, excluding the $63,776.57 in dissipated assets, the Barrister Equipment Account, and the $33,656 of the Fidelity Fund which the record establishes might go toward the payment of taxes, indicates the trial court's failure to take into due consideration the evidence with respect to the parties' past earnings and potential to accumulate future income and assets. In reaching this conclusion, we reject respondent's contentions that: his 1981 Cadillac had no value because it was encumbered to the extent of $12,000; the Fidelity Fund was exhausted by the payment of taxes; the Solomon debt was worthless as uncollectable. Specifically, there is no record evidence that the Fidelity Fund was, in fact, exhausted by the tax payments.

In *In re Marriage of Fryer* (1980), 88 Ill. App. 3d 454, 410 N.E.2d 596, the petitioner filed a petition for reconsideration of the property division entered by the trial court, alleging that the court had not considered the relevant factors set forth in section 503(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503), the former designation of now section 503(d) of the Act. In denying the motion, the trial court stated it had taken into consideration "what the statute said had to be taken into consideration." In discussing the standards to be applied by the trial court in making a property division and by a court reviewing that division, the appellate court stated:

"[I]f an examination of the *entire record* reveals that the trial court was aware of the requirements of sec. 503(c) and if *further* examination of the *entire record* reveals that the trial court arrived at an ultimate disposition *in harmony with the rationale of the statute,* no abuse of discretion has occurred. On review, [the] same standard must apply *** whether the result achieved meets the *rationale* of the statute. If not, it may then be said that an abuse of discretion has occurred." (Emphasis added.) 88 Ill. App. 3d 454, 457, 410 N.E.2d 596.

▆▌ ▌ Thus, under *In re Marriage of Fryer* we have a duty to examine the entire record before us to determine whether the trial court complied with the requirements of section 503(d) and arrived at a property distribution in harmony with the statute. (See also *In re Marriage of Rothbardt* (1981), 99 Ill. App. 3d 561, 425 N.E.2d 1146.) The record before us reveals that, in dividing the marital property, the trial court failed to take into consideration the relevant factors of dissipation of marital assets and relative earnings potential. We thus reverse and remand the property division portion of the judgment of dissolution. We are mindful of the deference with which we must treat a trial court's exercise of discretion on the issue of dividing property pursuant to such a judgment. (*In re Marriage of Smith* (1984), 128 Ill. App. 3d 1017, 1022, 471 N.E.2d 1008.) Although the trial court stated it had considered all of the relevant factors in section 503 in dividing the marital property and had given "special consideration to the parties' respective abilities to accumulate future assets," we conclude that the court failed to give due consideration to the factors relevant to a division of marital property in "just proportions" as required under section 503(d) (Ill. Rev. Stat. 1983, ch. 40, par. 503(d)). On remand, the trial court is directed to enter a finding that respondent dissipated $63,776.57 in marital assets, charge his share of the marital property therewith so as to compensate petitioner, and take into consideration in dividing the marital property the parties' relative future opportunities to accumulate capital assets and income. Moreover, because the amount of marital property apportioned to each spouse is one of the factors to be considered in deciding whether to grant an award of maintenance under section 504 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 504) and because we are remanding this cause for a division of marital property in harmony with the statute, the trial court is directed to reassess its denial of maintenance to either party. *Schubert v. Schubert* (1978), 66 Ill. App. 3d 29, 31, 383 N.E.2d 266.

▆▌ ▌ Petitioner next contends that the trial court erred in striking her post-judgment petition for a rule to show cause which sought an arrearage of $8,575.40 in temporary support payments allegedly due from respondent. The temporary support order provided for respondent's payment of $100 per week in maintenance and child support and of the expenses of the marital home, including mortgage and utilities. We cannot address the merits of this portion of the appeal due to petitioner's failure to include the petition for rule or the report of proceedings on the petition in the record on appeal. (*City of Chicago v. Hutter* (1978), 58 Ill. App. 3d 468, 374 N.E.2d 802.) The ab-

sence of the petition and the report of proceedings renders the record inadequate for this court to determine whether the alleged arrearages sought by petitioner were recoverable after judgment as vested support or maintenance. The record on appeal binds the parties and controls the reviewing court in its consideration of the appeal. (58 Ill. App. 3d 468, 469, 374 N.E.2d 802.) In the absence of a sufficiently complete record to support a claim of error, it must be presumed that the order appealed from was in conformity with the law and had a sufficient factual basis. (*Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 391-92, 459 N.E.2d 958.) Moreover, that respondent sets out in his brief the nature of the amounts allegedly sought by petitioner is of no avail to her since assertions in an appellate brief cannot serve as a substitute for a proper record. *Wade v. Gentle* (1981), 101 Ill. App. 3d 1042, 1045, 428 N.E.2d 1085.

For all of the foregoing reasons, the judgment appealed from is reversed, the order denying petitioner's post-judgment motion appealed from is affirmed, and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded.

WHITE and RIZZI, JJ., concur.