*In re* MARRIAGE OF DWAYNE A. BUSH, Petitioner-Appellee, and PATRICIA E. BUSH, Respondent-Appellant.

First District (5th Division)   No. 1—88—3331

Opinion filed February 8, 1991.

Dwayne Bush, of Matteson, appellant *pro se.*

Francis X. Speh, of Chicago, for appellee.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Patricia E. Bush appeals from the June 29, 1988, judgment order entered by the circuit court of Cook County dissolving her marriage to her husband, Dwayne A. Bush. In her appeal, she contends the trial judge (1) was bound by a pretrial order which required Dwayne to continue to pay temporary child support; (2) abused his discretion

in determining that Dwayne's voluntary termination of employment was done in good faith; (3) erred in determining that Dwayne had not dissipated marital assets; and (4) abused his discretion in the distribution of marital assets by failing to charge against Dwayne's share those marital assets dissipated by him and failing to consider the parties' relevant opportunities to accumulate future assets and income.

We affirm.

Relevant to our disposition are the following facts as shown in the record. The parties were married in 1976. Two children were born to the marriage, each still a minor at the time of these proceedings. During their marriage, Dwayne was initially employed by Montgomery Ward earning a base salary of $67,000 and Patricia was employed as a special education teacher earning $24,404. On March 27, 1985, Dwayne filed a petition for dissolution of the marriage. On June 10, 1985, an agreed order was entered for temporary support in which Dwayne agreed he would pay $200 per week as temporary maintenance and child support. Two years later (but still prior to the dissolution trial), Dwayne left his job with Montgomery Ward to take a job with Touche Ross earning $78,000. Five months later Dwayne voluntarily quit his job with Touche Ross complaining that the job required excessive travel which caused him physical stress, and prevented him from spending quality time with his children. However, in the five months after he quit, he visited his children only once but testified that he was prevented from visiting them because Patricia was hostile to him. He did not have a replacement job when he quit Touche Ross. Nonetheless, he did contact various executive recruiters and he sent resumes to 30 companies.

After becoming unemployed, Dwayne filed a petition to modify temporary support and maintenance requesting a reduction or abatement of the temporary support and maintenance required by the June 10, 1985, agreed order. The pretrial judge heard evidence on the petition, and on September 22, 1987, entered a pretrial order which denied the petition. The pretrial order provided that Dwayne's termination of employment from Touche Ross was free and voluntary, but it did not provide for a reduction or abatement of the child support.

At the dissolution trial, which began on February 3, 1988, neither party requested maintenance. After hearing arguments on the issue of child support, the trial judge first held that he was not bound by the pretrial order. He then found that Dwayne's voluntary termination of employment from Touche Ross was done in good faith and ordered that the child support payments be abated.

Dwayne testified that he and Patricia had separated in March 1985. Dwayne testified further that, after separating, he purchased a home; that his children visited the home; one of the bedrooms was furnished for the children; and that the children were listed as beneficiaries of the land trust which held title for the home. Patricia testified that the children rarely visited the home. Dwayne also testified that he purchased a car with his girlfriend's money; he admitted, however, that he deducted the sales tax on this purchase on his income tax return and that the car was registered in his name. Patricia testified that the car was purchased with marital funds. Dwayne also admitted that he withdrew money from a bank account and gave it to his father in an attempt to conceal the marital money. He explained that he followed the advice of his previous counsel on these matters. At the time of trial, there was a large mortgage on the home, the car was still being financed, and the money from the bank account and from another pension fund had been liquidated. Patricia argued that these facts constituted dissipation of marital assets. The trial judge disagreed and found that Patricia and Dwayne were entitled to an approximately equal distribution of marital assets. He then distributed the unencumbered assets to Patricia, the encumbered and liquidated assets to Dwayne. This appeal followed.

OPINION

The first issue is whether the trial judge was bound by the pretrial order requiring Dwayne to continue to pay temporary child support. Patricia argues the trial judge was bound because the pretrial order was *res judicata* on the issue of child support and because the pretrial judge made a factual determination that there was not a material change in circumstances sufficient to abate the child support. She asserts that the trial judge was bound by the pretrial order whether it concerned temporary or permanent child support.

■■ ■ The dispositive authority, here, is found in sections 501(d)(1) and (d)(3) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, pars. 501(d)(1), (d)(3)). Section 501, entitled "Temporary Relief," emphasizes the difference between temporary orders of support and permanent orders of support. The subparts state:

"(d) A temporary order entered under this Section:
(1) does not prejudice the rights of the parties or the child which are to be adjudicated at subsequent hearings in the proceedings;
***

(3) terminates when the final judgment is entered ***." (Ill. Rev. Stat. 1989, ch. 40, pars. 501(d)(1), (d)(3).)

The intent of the subsection is to make clear that the amount established for temporary support will not prejudice the parties at later hearings held to determine the amount of permanent support. (Ill. Ann. Stat., ch. 40, par. 501, Historical and Practice Notes, at 378 (Smith-Hurd 1980).) The subsection is also intended to preclude the application of *res judicata* principles to grants of temporary relief *vis-a-vis* permanent relief. (Ill. Ann. Stat., ch. 40, par. 501, Historical and Practice Notes, at 378 (Smith-Hurd 1980).) Case law has supported the proposition that temporary support is effective only until the termination of the dissolution proceedings. *In re Marriage of Zymali* (1981), 94 Ill. App. 3d 1145, 419 N.E.2d 487.

It is clear that the pretrial order established only temporary child support. Based on sections 501(d)(1) and (d)(3), we hold that the trial judge was not bound by the pretrial order in formulating the order for permanent child support.

■ The second issue is whether the trial judge abused his discretion in determining that Dwayne's voluntary termination of employment from Touche Ross was done in good faith. The test for good faith is:

"whether the change in status was prompted by a desire to evade financial responsibility for supporting the children or to otherwise jeopardize their interests." *Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 132, 416 N.E.2d 785, 790.

The facts concerning Dwayne's voluntary termination of employment from Touche Ross are, for the most part, uncontroverted. The parties disagree, however, whether the facts satisfy the test for good faith. Patricia argues that Dwayne was prompted by a desire to evade financial responsibility because he did not have a replacement job when he quit. Also, although Dwayne complained that the job prevented him from spending quality time with his children, he visited his children only once in the five months after he quit. As further evidence of his bad faith, Patricia emphasizes that after he quit he withdrew money from one bank account and gave it to his father in an attempt to conceal the marital money.

Dwayne, however, argues that the circumstances surrounding his voluntary termination of employment from Touche Ross do satisfy the test for good faith. He first points out that he did not start his job with Touche Ross until after he filed the petition for dissolution of marriage. He adds that his job with Touche Ross paid considerably more than his prior job with Montgomery Ward. Dwayne argues these

facts demonstrate that he was prompted by a desire to provide more, not evade, financial responsibility. As further evidence of his good faith, he testified that he quit Touche Ross because excessive business travel not only caused him great physical stress but also prevented him from spending quality time with his children. He argues that his single visitation of the children in the five months after he quit was the result not of his bad faith but the result of Patricia's hostility toward him. Finally, he argues that he demonstrated his good faith by contacting various executive recruiters and sending resumes to 30 companies.

■ Although Patricia presents some persuasive evidence to the contrary, sufficient evidence appears in the record to satisfy the test for good faith. On appeal, we are reminded that the trial judge is granted wide discretion in making a finding on good faith. (*In re Marriage of Hardy* (1989), 191 Ill. App. 3d 685, 548 N.E.2d 139.) Accordingly, we hold that the trial judge did not abuse his discretion in finding that Dwayne's voluntary termination of employment from Touche Ross was done in good faith.

■ The third issue is whether the trial judge erred in determining that Dwayne had not dissipated marital assets. Dissipation is defined as the use of marital funds for one spouse's sole benefit or for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown. (*In re Marriage of Partyka* (1987), 158 Ill. App. 3d 545, 511 N.E.2d 676.) Furthermore, a party charged with dissipation must establish by clear and convincing evidence how the funds were spent. *Partyka*, 158 Ill. App. 3d 545, 511 N.E.2d 676.

In the instant case, Dwayne had been charged with dissipation and thus was required to account for the funds used on the home, the car, and the funds in several bank accounts. He testified that his children were listed as beneficiaries of the land trust which held title for the home, the children visited the home, and one of the bedrooms was furnished for the children. Patricia testified, however, that the children rarely visited the home. Dwayne testified that the car was purchased with his girlfriend's money, even though the car was registered in his name and he deducted the sales tax on his income tax return. Patricia testified, however, that the car was purchased with marital funds. Also, there was no dispute that Dwayne withdrew money from one bank account and gave it to his father in an attempt to conceal the marital money.

*Partyka* provides specific examples of dissipation which apply here. There, the respondent was charged with dissipation and was re-

quired to account for his use of a loan payment, commission checks, and his expenditures on an apartment and furnishings. The respondent stated he gave the loan payment to the petitioner, but the petitioner denied having received it. The respondent stated that he used the commission checks to pay bills, but he was unable to specify further. Also, the respondent lived alone in the apartment. In light of these facts, the court found that the respondent did not prove by clear and convincing evidence that he did not use the funds for his sole benefit or for a purpose unrelated to the marriage at a time when the marriage was undergoing an irreconcilable breakdown. Therefore, the court held that the respondent dissipated marital assets.

■ Similarly, Patricia argues that Dwayne used marital funds for his sole benefit or for a purpose unrelated to the marriage at a time when his marriage was undergoing an irreconcilable breakdown and that he failed to show by clear and convincing evidence how the marital funds were spent. We agree that the trial judge erred in determining that Dwayne had not dissipated marital assets, but we need not remand this case to the trial court because of our disposition of the fourth issue.

■ The fourth issue is whether the trial judge abused his discretion in the distribution of marital assets by failing to charge against Dwayne's share those marital assets dissipated by him. The distribution of marital assets is within the discretion of the trial judge and will not be disturbed unless there has been a clear abuse of discretion. (*In re Marriage of Rothbardt* (1981), 99 Ill. App. 3d 561, 425 N.E.2d 1146.) A trial judge has abused his discretion when "no reasonable man would take the view adopted by the trial court." *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126, 129.

Although the *Partyka* case applies on the issue of dissipation, it does not apply on the issue whether the trial judge abused his discretion in the distribution of marital assets. In *Partyka*, the trial court distributed the liquid marital assets in equal amounts between the respondent and petitioner, excluding some $63,000 in assets dissipated by the respondent. The respondent also had a high-paying job. The appellate court held that this distribution amounted to an abuse of discretion. Therefore, the case was remanded for a redistribution of marital assets so that the amount dissipated by the respondent would be charged against his share of liquid assets.

■ ■ In order for Patricia to show that the trial judge abused his discretion in the distribution of marital assets, she must show that no reasonable man could take the view adopted by the trial judge. The

facts in the record do not support such a showing. The record shows that the trial judge accounted for each marital asset in formulating his order of distribution. In his formula, he distributed the unencumbered assets to Patricia and the encumbered and liquidated assets to Dwayne, explaining "[s]he got the money ***. He is going to receive a $5,000 check [which was set aside for attorney fees], and the rest of it is debt." Thus, the record establishes that the trial judge did not abuse his discretion in ordering the distribution of marital assets and we therefore affirm his order of distribution.

Although Patricia raised the issue that the trial judge abused his discretion in the distribution of marital assets by failing to consider the parties' relevant opportunities to accumulate future assets and income, her brief contains no supporting arguments. Her failure to do so constitutes a waiver of this issue. (*Reeder v. Old Oak Town Center* (1984), 124 Ill. App. 3d 1045, 465 N.E.2d 113.) Nonetheless, the above analysis indicates that the trial judge considered this issue.

Affirmed.

MURRAY and GORDON, JJ., concur.