*In re* MARRIAGE OF BLANKA FLOSMAN, Petitioner-Appellant and Cross-Appellee, and FRANK FLOSMAN, Respondent-Appellee and Cross-Appellant.

First District (3rd Division)   No. 86—1556

Opinion filed August 26, 1987.

Mammas & Goldberg, Ltd., of Chicago (Jerry S. Goldberg and Evan James Mammas, of counsel), for appellant.

Joel S. Ostrow, of Chicago, for appellee.

JUSTICE WHITE delivered the opinion of the court:

The trial court dissolved the marriage of petitioner Blanka Flosman and respondent Frank Flosman and it allocated the parties' assets. Both parties filed post-trial petitions for reconsideration of the property distribution and maintenance awards. The trial court entered orders disposing of both petitions for reconsideration. Blanka appeals from the original order and from the orders on reconsideration; Frank cross-appeals from the maintenance award ordered on reconsideration.

Blanka married Frank in 1955, and they had two children, Blanche and Frank George Flosman. Blanka filed her "Petition for legal separation or in the alternative dissolution of marriage" in January 1981. On January 23, 1981, the trial court entered a temporary re-

straining order which enjoined Frank from withdrawing savings from bank accounts in his name before February 2, 1981. In February the trial court renewed the temporary restraining order and it ordered Frank to pay Blanka $1,000 per month as unallocated maintenance and child support. In March 1981, Blanka petitioned to have Frank held in contempt for his failure to pay her $1,000 for the month and for withdrawing $5,000 from his savings account on January 26, 1981. He sent a check for that amount to his brother, and they opened a joint account in Canada with the check. Before hearing on the contempt petition, Blanka discovered that Frank had withdrawn an additional $28,000 from his savings accounts. The court ordered Frank to place $22,306 in an escrow account, pay Blanka $3,256 as equalization for a part of the withdrawals, and pay $1,000 of Blanka's attorney fees.

In December 1981, Frank received notice that the factory at which he worked was permanently closing. On Frank's petition for modification of temporary maintenance, the trial court ordered Frank to pay Blanka 35% of his net income from all sources. The court allowed Frank to withdraw the $22,306 escrow account to meet his expenses prior to the end of trial.

Trial began in February 1983. The parties' principal assets were two apartment buildings. They stipulated that the three-unit apartment building in Cicero was worth $102,500, and there was no mortgage on the property. They also stipulated that the 32-unit apartment building in Berwyn was worth $400,000. The parties did not stipulate to the outstanding debt on the Berwyn property, nor did they stipulate to the net equity in that building.

Blanka testified that she lived with her 21-year-old son, Frank George, in one of the apartments of the Cicero property. Her 26-year-old daughter, Blanche, lived in the basement apartment and paid her $175 monthly rent. The tenants in the upstairs apartment paid her $330 per month. Blanka suffered from arthritis and mitral valve prolapse. The pain rendered her incapable of performing any physical work, and it caused her to leave her job as an assembly worker in 1978. She had not sought work or rehabilitation since 1978. She testified that her expenses were approximately $1,430 per month, and she had outstanding debts of $9,400.

Frank testified that he lived in one of the 32 units of the Berwyn property. He received unemployment compensation for six months after he lost his job in December 1981, but he had not sought work since his unemployment benefits were terminated. He should receive pension benefits of approximately $60 per month beginning in 1995.

Neither party presented any evidence regarding the present value of Frank's pension benefits.

At a hearing in August 1983, Frank testified that he owned two cars, a 1974 Pinto and a 1974 Mercury, but he stated that both cars were worthless. Blanka's attorney said: "There is no value on either automobile." The court responded: "It's agreed there is no value for either vehicle." The court later asked: "Do each of the parties want there to be no value as to the furniture, just that each shall have what is in their possession ***?" Neither party objected.

Frank further testified that he had several savings and checking accounts at various banks. The banks' summaries of these accounts were admitted into evidence; however, those exhibits are not included in the record on appeal. Frank testified that he owed $11,000 in unpaid income taxes for the years from 1977 to 1982. He had been hospitalized in 1982 and he owed the hospital $37,425 for its services. He owed an additional $4,918 for medical care he received in 1983, and on the date of his testimony he had not yet received bills for more recent services. The court found that even if Frank had insurance which covered these services, he would owe at least $8,000 as his share of the payments. His medical condition rendered him incapable of working. He received social security benefits of $616 each month, beginning in January 1983. He had not given any part of his social security benefits to Blanka, although the court had ordered him to give her 35% of his income from all sources.

The trial court found that the parties' liabilities exceeded their liquid assets, and neither party could earn enough money to cover their debts. The court entered an order on September 1, 1983, requiring Frank to present his medical bills to his insurer, finding him more than $1,700 in arrears in his support payments to Blanka, and ordering the parties to list both the Berwyn and the Cicero properties for sale with real estate brokers at prices 35% greater than the stipulated market values.

On October 21, 1983, Blanka moved to have Frank held in contempt for his failure to list the Berwyn property with a realtor. The court issued a rule to show cause, but it discharged the rule following the hearing on October 24, 1983. Blanka subsequently moved twice to have Frank held in contempt for failure to comply with discovery orders and once for failure to list the Berwyn property for sale with a multiple listing realtor. Frank testified that investors had offered to buy the Berwyn building for $400,000, but he refused to sell because the offer was less than the building was worth. In November 1984, Blanka sought to have Frank held in contempt because he had ob-

structed efforts to sell the Berwyn property and because he had failed to pay real estate taxes for the Cicero property as required by an earlier order. The court ordered Frank to use his IRA to pay the taxes, and it ordered him to list the Berwyn property with a multiple listing realtor. The court reserved the issue of sanctions for contempt for determination with attorney fees at the conclusion of the case.

Before the court began to apportion the property, it restated the valuations of the properties at a hearing held on December 11, 1984. The parties again agreed to the stipulated values of $102,500 for the Cicero building, with no mortgage, and $400,000 for the Berwyn building; the court found that the net equity in the Berwyn property was $180,742. Blanka's attorney stated in his closing argument that Blanka sought to retain the Cicero property and he argued that she was entitled to 65% of the proceeds from the sale of the Berwyn property. The attorney did not disavow the previous agreements he had made that the cars and the furniture were worthless. Neither in closing argument nor in the petition for dissolution did Blanka seek any portion of Frank's pensions, nor did she present evidence or argument concerning the value of the pensions.

On February 22, 1985, the court entered its order dissolving the marriage of the parties. It ordered the parties to agree on an individual to manage the Berwyn building, and it ordered Frank to pay Blanka temporary maintenance of 42% of his net income from rent, social security and disability, or $229 per month, whichever is greater. The court gave Blanka the option of receiving $160,000 or retaining the Cicero building and receiving $80,000. Her maintenance was to terminate when she received the $80,000 or $160,000, but the court would review her need for maintenance within six months after she received the money. The court ordered each party to pay his own attorney fees, and it allowed each party to retain all other property in his possession. The court made no reference to Blanka's petitions to hold Frank in contempt.

Frank filed a petition for reconsideration of the appointment of a manager and of the provision for court review of maintenance after six months. Blanka sought reconsideration of the failure to allocate her outstanding debts of $9,400, and she asked the court to award her permanent maintenance, health insurance, a larger percentage of the value of the Berwyn property, and attorney fees. She argued that the Berwyn property had not been properly appraised.

The court determined that health insurance was most readily available through the union in which Frank had been a member. On May 5, 1986, the court ordered Blanka to pay $170 per year for union

dues and $1,130 per year for medical insurance through the union; it ordered Frank to pay the balance of approximately $106 per month through the end of 1987.

The court entered its order disposing of all other issues raised by the petitions for reconsideration on May 29, 1986. It determined that there was no need to appoint a manager for the Berwyn property if Frank deposited $80,000 in an escrow account within three days after entry of the order. It ordered Frank to contribute $7,000 to payment of Blanka's debts. It also stated that:

> "[I]f BLANKA does not accept the EIGHTY THOUSAND DOLLARS ($80,000), and the matter is appealed, BLANKA'S right to maintenance shall terminate upon the issuance of the mandate from the Appellate Court."

The court did not otherwise alter its original decision. It did not grant Blanka's request to reopen the proof regarding the values of the properties.

■■ On appeal Blanka contends that the proceedings did not comport with the requirements of due process. In order for court proceedings to meet the constitutional requirement of due process, the court must give litigants notice and an opportunity to be heard in an orderly proceeding which is appropriate for the case. (*City of Chicago v. Cohn* (1927), 326 Ill. 372, 374-75, 158 N.E. 118.) Blanka received notice of all proceedings and the court gave her ample opportunity to state her case and cross-examine witnesses. She complains that the proceedings continued too long and that not all issues were resolved. However, she requested several of the continuances. The lapse of time, considered in itself, does not amount to a deprivation of due process. Upon review of the record, we find that all issues raised in the case at bar were resolved by the trial court, either in its original order or in its supplemental orders following petition for reconsideration. Blanka argues that the trial court violated her right to due process and abused its discretion when it denied her post-trial motion to reopen the proofs concerning the current value of the Cicero and Berwyn properties. Blanka stipulated to the values of the properties at the outset of the case, and she reiterated that stipulation in December 1984, two months before the court entered its original order apportioning the properties. She does not argue that evidence of the increased value of the Berwyn property was unavailable prior to the entry of judgment—indeed in this appeal she asserts that the stipulated valuation must have been too low because Frank testified in October 1984 that he was unwilling to sell the building for $400,000. The trial court did not abuse its discretion in refusing to reopen the case

for the introduction of new evidence when that evidence was available prior to the close of trial. (*Freeman v. Augustine's Inc.* (1977), 46 Ill. App. 3d 230, 236, 360 N.E.2d 1245.) We find that the proceedings below were "orderly proceedings according to established rules, which do not violate fundamental rights." (*Grattan v. Ahlberg Bearing Co.* (1940), 373 Ill. 455, 457, 26 N.E.2d 499.) The trial court did not violate Blanka's right to due process.

■ Blanka next argues that the trial court abused its discretion in apportioning the property and providing maintenance. In particular Blanka contends that the order improperly omits a finding of Frank's net income and of the arrearages due for unpaid maintenance. She objects to the court's failure to value and allocate Frank's IRA, his pension plans, life insurance, automobiles, and the parties' furniture. She claims she should have received some portion of the $5,000 Frank withdrew from one of his accounts on January 26, 1981, and from his other bank accounts which he dissipated over the course of the trial. She also claims that she should have received part of a tax refund which she claims the IRS owes Frank.

Blanka clearly agreed on the record to consider the cars and the furniture worthless. Blanka has also already received compensation for the $5,000 Frank withdrew from his account, as the court in 1981 ordered Frank to pay Blanka $3,256 as an equalization for that and other withdrawals. Most of the amount withdrawn was placed in an escrow account from which the court allowed Frank to make withdrawals only when he could show that he needed the money to meet legitimate expenses. Frank testified that the IRS withheld a large tax refund from him to compensate for taxes owed from 1977 to 1982. There was no evidence that Frank had access to the refund or that he could use the money in any manner other than for cancellation of his outstanding debt to the IRS.

Blanka seeks a remand for valuation of Frank's pension plans and life insurance although she did not present any evidence at trial regarding the current value of those assets. As this court stated:

"Despite the fact that numerous hearings regarding the division of property were held and that only a limited amount of property was involved, neither party presented the trial court with solid evidence of the properties' value so that the court could make the fairest possible division of the parties' assets. We again emphasize that it is the parties' obligation to present the court with sufficient evidence of the value of the property. Reviewing courts cannot continue to reverse and remand dissolution cases where the parties have had an adequate opportu-

nity to introduce evidence but have failed to do so." (*In re Marriage of Smith* (1983), 114 Ill. App. 3d 47, 54, 448 N.E.2d 545.)

We find that the trial court valuations of the parties' assets are not contrary to the manifest weight of the evidence.

■ The trial court gave Blanka the Cicero property, valued at $102,500, and $80,000 in cash, and it ordered her to pay $3,000 of her outstanding debts and her attorney fees. The court gave Frank his net equity in the Berwyn property, valued at $180,000, but it ordered him to pay $7,000 of Blanka's outstanding debts, and he needed to assume a new debt of $80,000 in order to give that money to Blanka. The trial court also let each party retain his own furniture and bank accounts; summaries of the bank accounts were in evidence before the trial court but that evidence is not included in the record on appeal. Thus, it appears that the trial court allocated to Blanka property with a net worth of $180,000, and it allocated to Frank property worth $93,000. We find that this distribution adequately compensates Blanka for Frank's alleged dissipation of bank accounts and arrearages for maintenance payments. We cannot say that the trial court abused its discretion in its distribution of the property. *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 462-64, 426 N.E.2d 1087.

■ ■ Similarly, we find that the court appropriately ordered Frank to pay Blanka 42% of his net income as temporary maintenance. (*Honey v. Honey* (1970), 120 Ill. App. 2d 102, 106, 256 N.E.2d 121.) The maintenance will terminate once Blanka receives the $80,000 in cash as part of the property distribution. At that point Blanka will have received most of the parties' assets, and all of their liquid assets, and therefore we find that the trial court did not abuse its discretion in ordering the termination of temporary maintenance upon Blanka's receipt of $80,000. (*Eule v. Eule* (1974), 24 Ill. App. 3d 83, 89-90, 320 N.E.2d 506.) Further we find that Blanka did not establish that Frank will be more capable of paying her attorney fees than she will be, and thus we hold that the trial court did not abuse its discretion in ordering each party to pay his own fees. *In re Marriage of Melnick* (1984), 127 Ill. App. 3d 102, 110, 468 N.E.2d 490.

■ Finally, Blanka contends that we must reverse the trial court's decision because the trial court failed to render any final decision on her petitions to hold Frank in contempt. Our supreme court has held that a contempt proceeding, "although occurring within the context of another proceeding ***[,] is an original special proceeding, collateral to and independent of, the case in which the contempt arises." (*People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 172,

429 N.E.2d 483.) The trial court rendered no final judgment in the separate contempt proceeding. "The appellate court, subject to exceptions for appeals from interlocutory orders specified in [Supreme Court] rules, is without jurisdiction to review judgments, orders or decrees which are not final." (*Flores v. Dugan* (1982), 91 Ill. 2d 108, 112, 435 N.E.2d 480.) The exceptions specified in the supreme court rules are not here relevant, and no final judgment has been entered regarding the petitions for contempt. Therefore, we lack jurisdiction to review the trial court's failure to sanction Frank for contempt. We affirm the trial court judgment regarding all issues which Blanka raises in her appeal.

Frank cross-appeals from the trial court order which grants Blanka maintenance continuing until "the issuance of the mandate from the Appellate Court." According to section 504(b) of the Illinois Marriage and Dissolution of Marriage Act (the Marriage Act), the court may order maintenance "in such amounts and for such periods of time as the court deems just," and the maintenance "may be in gross or for fixed or indefinite periods of time." (Ill. Rev. Stat. 1985, ch. 40, par. 504(b).) The court must consider "the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently." Ill. Rev. Stat. 1985, ch. 40, par. 504(b)(1).

■■ In the instant case the court found that Blanka was not able to earn enough income, and she did not have sufficient liquid assets, to meet her immediate needs. The court recognized that she would be able to meet her expenses at least temporarily once she received the $80,000 in cash, but it also recognized that she would jeopardize her right to appeal by accepting that money. Thus, it awarded her maintenance to terminate once any appeal was concluded or when she accepted the $80,000 if no appeal was taken. We believe that the trial court did not abuse its discretion under section 504(b) of the Marriage Act in formulating this award of maintenance. *In re Marriage of Brooks* (1985), 138 Ill. App. 3d 252, 265-66, 486 N.E.2d 267.

■■ Frank contends that section 504(c) of the Marriage Act deprives the court of discretion to make this award of maintenance. That section provides that the trial court

> "may grant and enforce the payment of such money for equitable maintenance during the pendency of an appeal which is against the party receiving such equitable maintenance, as the court shall deem reasonable and proper." (Ill. Rev. Stat. 1985, ch. 40, par. 504(c).)

In general, once either party has filed a notice of appeal from the

judgment of the trial court, the trial court loses jurisdiction over the case. (*Farwell Construction Co. v. Ticktin* (1980), 84 Ill. App. 3d 791, 806-07, 405 N.E.2d 1051.) Section 504(c) provides a limited exception to that rule: the trial court may order maintenance after the filing of the notice of appeal in a proceeding for dissolution of marriage, but in that case it may award maintenance only to the party against whom the appeal is prosecuted. (*Dendrinos v. Dendrinos* (1978), 58 Ill. App. 3d 639, 642-43, 374 N.E.2d 1016.) In the present case, the trial court ordered maintenance when it clearly had jurisdiction to make the award, before the notice of appeal was filed. Section 504(c) is, therefore, irrelevant to these proceedings; the award of maintenance was proper under section 504(b).

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

RIZZI and FREEMAN, JJ., concur.