*In re* MARRIAGE OF SUSAN WOLF, Petitioner-Appellee and Cross-Appellant, and ALAN WOLF, Respondent-Appellant and Cross-Appellee.

First District (1st Division) No. 1—87—0282

Opinion filed March 13, 1989.

F. James Foley, Richard Gigante, and Paul R. Jenen, all of Chicago, for appellant.

Bush & Heise, of Barrington, for appellee.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Susan Wolf, petitioner, and Alan Wolf, respondent, were married on August 8, 1970. No children were born of this marriage nor were any adopted. Susan Wolf filed for dissolution of marriage on April 15, 1983. A contested trial was held on September 11 and 12, 1986, regarding division of marital property and indebtedness, maintenance, and attorney fees.

Alan Wolf testified that he is currently living with his mother and has lived with her for approximately three years prior to trial. He has a bachelor's degree in accounting and education and a master's degree in guidance and counseling. Between 1970 and 1978 he worked as a teacher in the Chicago public school system, school district 211, Grays Lake School, Fremd High School in Palatine, and a junior college in Chicago. From 1979 to 1982 Mr. Wolf worked in the areas of real estate sales, outside salesman, high school/college teaching, accounting and hospital work. Between 1982 and 1984 he worked as a school bus driver, a real estate salesman, and purchased an Amway distributorship. He has not been employed since 1984, when he attempted suicide.

Mr. Wolf attended the Fillmore Job Co-op from September 1984 through February 1985 in order to develop the personal skills needed to better cope with a job. Although the staff at Fillmore recommended continuation in the program, Mr. Wolf dropped out of this program prior to completion.

Mr. Wolf also presented testimony regarding his history of hospitalizations beginning in 1967, when he was placed in the psychiatric ward of Loretto Hospital for three weeks, while in college, after threatening his mother and father with a gun. He was hospitalized in 1980 at St. Anne's Hospital in the psychiatric ward for three weeks

as a result of stress and physical problems he suffered in coping with his job. St. Anne's Hospital discharged him for a week, then he was returned to the hospital for four weeks. In April 1983, he was hospitalized at St. Joseph's Hospital in Elgin after he attempted to kill his wife's attorney in the courtroom with a knife. During the summer of 1983 he was also hospitalized for three weeks at the River's Edge Hospital after stabbing a policeman. He was again hospitalized at River's Edge Hospital for five weeks in the summer of 1984, after attempting suicide through a drug overdose. Finally, he was hospitalized in 1985 at River's Edge Hospital for three weeks for depression. Mr. Wolf testified that he has been taking medication on a regular basis.

Mr. Wolf further testified regarding his sources of income. Since the summer of 1984, he has been receiving social security disability payments of $246 per month, and he is entitled to medicare benefits. Moreover, he has health benefits under his wife's group health plan. He also testified that he has used the interest earned from his Cragin Federal savings account of about $300 per month to pay for his living expenses, and he has borrowed money from his mother, amounting to $33,000 at the time of trial.

Mr. Wolf testified that on April 15, 1983, when the divorce was filed, they had approximately $400,000 in marital assets as the result of selling the marital home for $170,000, certificate of deposits of $100,000, savings of $100,000, individual retirement accounts for $16,500, a coin collection appraised at $4,300, and H&R Block stock which sold for a net of $962. He further testified that in 1983, he purchased two Cadillac Seville automobiles. The first automobile, a brown Cadillac Seville, was purchased on April 13, 1983, for $26,560. On May 15, 1983, Mr. Wolf purchased a red Cadillac Seville for $32,355, paid for from the Cragin Federal Savings and Loan account. Four months after purchase, Mr. Wolf sold the red Cadillac Seville for $23,000, transferring a portion of that money to his mother for living expenses and depositing $17,000 in an account at the LaGrange Federal Savings and Loan, which he subsequently spent. He transferred title of the brown Cadillac to his mother as repayment for the room and board that his mother had provided him during the past year and a half.

Mr. Wolf also testified regarding his living expenses at the time of trial. He has an oral agreement with his mother to pay her $1,000 per month for room and board and the use of the car. He also pays for his other living expenses, including $25 per week for gas, $100 per month for doctor visits and drugs, $200 per month for clothing and $100 to $300 per week on entertainment.

Susan Wolf testified that she has a bachelor's degree in education and a master's degree in counseling-psychology. She is working as a counselor at Schaumburg High School, earning approximately $44,000 per year, resulting in a $1,242.80 biweekly net income.

Ms. Wolf further testified that at the time this action commenced on April 15, 1983, they had assets totalling approximately $360,000. This amount was based on the selling of the marital home for a net of $175,000, savings accounts at Citicorp Savings and Loan for $100,000, the Land of Lincoln for $39,000, Talman Savings for $10,000, Cragin Federal Savings and Loan for $55,000, a checking account at First Bank of Schaumburg for $1,849, with a current balance of $300, money market account at First National Bank of Hoffman Estates for $2,663, a coin collection, stocks, an individual retirement account for $5,200, and automobiles and home furnishings. The assets also included her teacher's pension with a total contribution of $26,000 together with accrued interest totalling $34,000. She also made a contribution of $3,290 for the 1984-85 school year. Ms. Wolf stated that if she quit her job she would only be entitled to her $26,000 contribution, less a penalty. She further stated that she does not know what her monthly payments would be at retirement.

Ms. Wolf testified that she purchased a 1984 Cutlass Oldsmobile for $11,000. However, at the time of trial she was unaware of the value of the automobile. Moreover, her average monthly living expenses totalled $1,455 to $1,565 per month, including rent, utilities, food, clothing, gasoline, automobile repairs, medical bills, entertainment, and telephone. She finally testified that Mr. Wolf could obtain a spin-off health insurance policy through her group health insurance plan at work.

Camille Ferrance, a clinical psychologist, who began treating Alan Wolf in 1980 when he was at St. Anne's Hospital, testified that Alan has been diagnosed as acute schizophrenic reaction-paranoid type. Dr. Ferrence stated that Alan has unrealistic expectations of himself and his difficulty with jobs is characteristic of his illness. He also experiences hallucinations and delusions. Dr. Ferrence further testified that the purchasing of the two Cadillacs was done out of frustration and Alan's feelings of power, which is consistent with schizophrenia. Dr. Ferrence stated that Alan can have periods of normalcy, but he is unable to handle "day to day" problems as a normal individual would. She determined that Alan's stress occurs when he is working with people.

Dr. Ferrence testified that she believes that it is unlikely that Alan could function in the capacity of teacher or counselor, and in her

opinion he would have to remain on medication and would be in need of psychiatric care for the rest of his life. Although Alan cannot cope with the pressure of accounting, there is a possibility that he may work in the future. However, Alan must be retrained for a different vocation that would allow him to work with his hands and less with people. Dr. Ferrence testified that she referred Alan to the Fillmore Job Co-op. However, he left the program before they could make a job recommendation to him. On cross-examination she read from a psychiatric evaluation history where Alan communicated that he did not want a low paying job but a job commensurate with his college education. At the same time he indicated that he wanted maintenance as a part of the divorce settlement.

Dr. Bernard G. Suran, a clinical psychologist, also testified that since 1967 Alan has suffered from chronic paranoid schizophrenia, and that although Alan's medication reduces his symptoms, there is no known cure for schizophrenia. Moreover, even if Alan takes his medication as prescribed, there is no guarantee that he will not slip out of remission and have a violent episode. Dr. Suran stated that in paranoid schizophrenia there is progressive disorganization within the individual and his thought processes are frequently delusional, involving feelings of persecution or grandiosity. In his opinion Alan is not employable in the conventional sense and would require medication and some form of psychological therapy for the rest of his life. Additionally, his employability prospects are getting worse because of the deterioration in his functioning. Dr. Suran believes that Alan could manage a job that did not require interpersonal contact on a regular basis.

Dr. Robert E. Bussell, director of clinical services at Cook County juvenile court, testified that he observed Alan in 1985, and Alan was potentially suicidal. Alan talked about killing himself and his wife. In his opinion, Alan has the intelligence to "hold down" a job but it must be low stress with almost no contact with people. He also testified that Alan has been a chronic paranoid schizophrenic since 1967, and the purchase of the two Cadillacs is consistent with the grandiose stage of schizophrenia. He believes that once the divorce is over, Alan's stress will be reduced and his illness should be helped.

A judgment for dissolution of marriage was entered on December 29, 1986. The petitioner was awarded: (1) her pension fund; (2) the account at Schaumburg State Bank; (3) the account at the First Bank of Hoffman Estates; (4) the 1984 Oldsmobile Cutlass automobile; (5) her IRA account; and (6) any and all personal property presently in her possession. The respondent was awarded: (1) the account at Cragin

Savings and Loan; (2) the account at LaGrange Federal Bank; (3) his account at Land of Lincoln; (4) his IRA; and (5) any and all other personal property presently in his possession. Moreover, the joint accounts at Pathway Financial, America National and Land of Lincoln were to be divided equally between the parties.

The petitioner is also required to pay to the respondent $500 per month for maintenance to be reviewed in two years, and each party is responsible for payment of his own attorney fees. Finally, the petitioner is to "effectuate proceedings to retain the respondent on her medical insurance policy." Alan Wolf appealed that portion of the judgment relative to division of marital property and debts, maintenance, and attorney fees.

Alan contends that the trial court's decision to award him only 54% of the marital assets while awarding Susan 46% was against the manifest weight of the evidence and an abuse of discretion. Alan specifically maintains that he should have been awarded the bulk of the assets or at least 80%, if the trial court would have considered his age, health, economic circumstance, prospects to produce income and the length of the marriage. Moreover, it is not clear what value the trial court placed on the marital assets such as the account balance at LaGrange Federal Savings and the petitioner's 1984 Oldsmobile Cutlass. Furthermore, there is a discrepancy in the value of the petitioner's pension.

■ A reviewing court will not disturb a division of marital property unless an abuse of discretion is shown. (*In re Marriage of Partyka* (1987), 158 Ill. App. 3d 545, 550, 511 N.E.2d 676; *In re Marriage of Ales* (1986), 148 Ill. App. 3d 305, 309, 499 N.E.2d 168.) There is an abuse of discretion if no reasonable person would take the view adopted by the trial court. *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126.

The touchstone of the proper apportionment of property is whether the distribution is equitable in nature. (*In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 325, 453 N.E.2d 748; *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1132, 398 N.E.2d 126.) The Illinois Marriage and Dissolution of Marriage Act does not require an equal division of marital property but an equitable division. *In re Marriage of Melnick* (1984), 127 Ill. App. 3d 102, 107, 468 N.E.2d 490; *In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 37, 411 N.E.2d 238.

The trial court must consider all relevant factors under section 503(d) of the Illinois Marriage and Dissolution of Marriage Act in dividing marital property. (Ill. Rev. Stat. 1983, ch. 40, par. 503(d); *In re*

*Marriage of Smith* (1984), 128 Ill. App. 3d 1017, 1025, 471 N.E.2d 1008.) The relevant factors in the case at bar include:

"(1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit;

(2) the value of the property set apart to each spouse;

(3) the duration of the marriage;

(4) the relevant economic circumstances of each spouse when the division of property is to become effective ***;
* * *

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;
***

(9) whether the apportionment is in lieu of or in addition to maintenance;

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income; and

(11) the tax consequences of the property division upon the respective economic circumstances of the parties." Ill. Rev. Stat. 1983, ch. 40, par. 503(d).

The property was awarded by the trial court in the following manner:

| Description | Husband | Wife |
| --- | --- | --- |
| Teacher Pension | | $26,219 |
| Account at Schaumburg State Bank | | 300 |
| Account at First Bank of Hoffman Estates | | 2,663 |
| Her IRA | | 5,622 |
| Cragin Savings and Loan Account | $54,507 | |
| LaGrange Federal Bank Account | 0 | |
| His Land of Lincoln Account | 125 | |
| His IRA | 3,000 | |
| Pathway Financial Savings Account (50%) | 90,000 | 90,000 |
| Land of Lincoln Account (50%) | 19,868 | 19,868 |
| | $167,500 | $144,672 |

Each party was also awarded all personal property presently in his possession, and Susan was awarded her 1984 Oldsmobile Cutlass automobile.

■ Alan argues that the trial court failed to make definite find-

ings as to the relevant factors considered in dividing the property. A trial court should make specific findings regarding the factors it considered under section 503(d) in rendering its decision. (*In re Marriage of Los* (1985), 136 Ill. App. 3d 26, 29-30, 482 N.E.2d 1022; *Sostak v. Sostak* (1983), 113 Ill. App. 3d 954, 447 N.E.2d 1345.) However, where the record adequately provides a basis for a reviewing court to determine the propriety of the decision and the decision is supported by the evidence, the trial court will not be reversed solely because the record does not contain specific findings. *In re Marriage of Ales* (1986), 148 Ill. App. 3d 305, 308, 499 N.E.2d 168; *In re Marriage of Melnick* (1984), 127 Ill. App. 3d 102, 108, 468 N.E.2d 490.

■■ In this case, the trial court divided the marital assets, which totalled $312,172, by allocating to Alan $167,500 in marital assets (54% of the total marital assets) and allocating $144,672 in marital assets to Susan (46% of the total marital assets). The record reveals that the trial court specifically stated that it considered the relevant factors enumerated under section 503(d). Additionally, the court specifically noted that it considered the reasonable opportunity of each party to accumulate future assets.

Alan testified that he received approximately $300 per month from the interest of the Cragin Savings and Loan account with a balance of approximately $54,000. If he properly invested only the $109,868 that he was awarded from the Pathway Financial and the Land of Lincoln accounts, he could foreseeably receive an additional $600 per month in interest, totalling $900 per month in interest from these three accounts. This $900 per month is exclusive of the $246 per month that Alan is receiving as social security disability payments and the $500 per month that Susan is required to pay for Alan's maintenance.

■■ We also find unpersuasive respondent's argument that the trial court did not place a value on Susan's 1984 Cutlass Oldsmobile and that there is a discrepancy in the value of the petitioner's pension. It is the parties' obligation to provide the trial court with sufficient evidence of the value of property, including pension rights, and the trial court will base its division of property upon the evidence presented. (*In re Marriage of Smith* (1983), 114 Ill. App. 3d 47, 54, 448 N.E.2d 545.) In this case, Susan testified that she did not know the current value of her automobile and neither party presented evidence regarding the automobile's value. A reviewing court will not reverse the trial court where the parties have failed to produce evidence in dissolution cases when there was an adequate opportunity to do so. *In re Marriage of Flosman* (1987), 160 Ill. App. 3d 832, 838-39, 513

N.E.2d 879; *In re Marriage of Smith* (1983), 114 Ill. App. 3d 47, 54, 448 N.E.2d 545.

When Susan testified to the value of her pension plan and the refundable distribution, the respondent's attorney did not object to these figures, nor did he present any contrary evidence to Susan's pension plan. Furthermore, the Teacher's Retirement System presented a statement of the value of the pension as $26,219, which was stipulated to prior to trial by both parties. A party cannot argue for the first time on appeal regarding the value of a pension, when he has failed to object to the value before the trial court and failed to introduce to the trial court evidence to the contrary. (*In re Marriage of Callaway* (1986), 150 Ill. App. 3d 712, 714-15, 502 N.E.2d 366.) We conclude that there was sufficient evidence presented regarding the value of the pension plan.

■ Susan argues that Alan dissipated marital assets. It should be noted that although the trial court did not indicate that it specifically addressed Alan's dissipation of marital assets, the court may consider the dissipation when apportioning marital property. (*In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 462 N.E.2d 1087.) Dissipation of marital assets may occur where one spouse uses marital property solely for his benefit for a purpose unrelated to the marriage when the marriage is in serious jeopardy. (*In re Marriage of Los* (1985), 136 Ill. App. 3d 26, 31, 482 N.E.2d 545; *In re Marriage of Smith* (1983), 114 Ill. App. 3d 47, 51, 448 N.E.2d 545.) Alan's dissipation of assets was evidenced by the purchase of two Cadillacs in the amounts of $26,560 and $32,355, after it became clear that the marriage was in jeopardy. Moreover, he sold a coin collection from which he received $4,300 and H&R Block stock from which he received $962.

If an examination of the record reveals that the trial court was aware of the requirements of section 503(d), and its disposition of marital property was consistent with section 503(d), then an abuse of discretion has not occurred. (*In re Marriage of Partyka* (1987), 158 Ill. App. 3d 545, 555, 511 N.E.2d 676; *In re Marriage of Fryer* (1980), 88 Ill. App. 3d 454, 457, 410 N.E.2d 596.) After reviewing the record and the relevant statutory factors, we are convinced that the trial court's apportionment of marital property was equitable and consistent with section 503(d). Therefore, it did not result in an abuse of discretion.

■ The respondent next contends that the trial court abused its discretion in awarding him only $500-per-month maintenance. An award of maintenance is within the discretion of the trial court, and it will not be disturbed by a reviewing court unless there is an abuse of discretion or the determination is against the manifest weight of the

evidence. (*In re Marriage of Kaplan* (1986), 149 Ill. App. 3d 23, 33, 500 N.E.2d 612; *In re Marriage of Johnson* (1982), 106 Ill. App. 3d 502, 508, 436 N.E.2d 228.) An abuse of discretion will occur where no reasonable man would take the view of the trial court. *In re Marriage of Los* (1985), 136 Ill. App. 3d 26, 33, 482 N.E.2d 1022; *In re Marriage of Glessner* (1983), 119 Ill. App. 3d 306, 456 N.E.2d 311.

Section 504(b) of the Illinois Marriage and Dissolution of Marriage Act sets forth the following factors to be considered for the awarding of maintenance to the spouse seeking maintenance, including:

> "(1) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently ***;
>
> (2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
>
> (3) the standard of living established during the marriage;
>
> (4) the duration of the marriage;
>
> (5) the age and the physical and emotional condition of both parties;
>
> (6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and
>
> (7) the tax consequences of the property division upon the respective economic circumstances of the parties." Ill. Rev. Stat. 1983, ch. 40, par. 504(b).

The trial court set a two-year time limitation for the review of its maintenance award. The purpose for providing maintenance for a certain length of time is to provide an incentive for the spouse receiving maintenance to use this time in diligently trying to obtain the necessary training or skills to become self-sufficient. (*In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 351, 461 N.E.2d 447.) A spouse seeking maintenance has an affirmative duty to diligently try and secure gainful employment. (*In re Marriage of Kaplan* (1986), 149 Ill. App. 3d 23, 33, 500 N.E.2d 612; *In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 328, 453 N.E.2d 748.) In this case expert testimony revealed that although Alan could not maintain employment which required direct contact with people, he could seek employment in other areas.

In determining the proper amount of maintenance the trial court specifically stated that it had considered the factors set out in section 504(b). Moreover, in reaching its conclusion, the trial court stated that it had observed the witnesses, given proper weight and credence to

their testimony and special consideration was given to the reasonable opportunity of each party to accumulate future assets. As previously noted, Alan testified that he received $300 per month interest on the $54,000 principal in Cragin Savings and $246 per month in social security disability payments. Therefore, in addition to the $500-per-month maintenance award, Alan can generate income from the assets apportioned to him.

Alan was awarded approximately $167,500 or 54% of the marital assets. The court in *In re Marriage of Borg* (1981), 96 Ill. App. 3d 282, 286-87, 421 N.E.2d 214, awarded the wife $177,500 in assets or 26% of the marital assets and denied periodic maintenance, concluding that the assets awarded were sufficient to meet her reasonable needs. In this case the trial court could have concluded that Alan was not entitled to receive maintenance in light of his substantial award of marital property. Instead, the trial court granted Alan a $500-per-month maintenance award to be reviewed in two years. We are not convinced that the maintenance award in conjunction with the monthly social security disability payment and the marital property distribution are insufficient to provide for Alan's reasonable needs. After reviewing the record, we cannot conclude that the trial court abused its discretion in awarding maintenance nor does the record show that the maintenance award is against the manifest weight of the evidence.

■ The respondent finally contends that the trial court abused its discretion when it failed to order Susan to contribute towards his attorney fees and cost. Specifically, the respondent argues that he was never allowed to file a petition for attorney fees since the court determined that each party would pay his own attorney fees.

The award of attorney fees is within the sound discretion of the trial court, and a court of review will not disturb that decision absent an abuse of discretion. (*In re Marriage of Stockton* (1988), 169 Ill. App. 3d 318, 328, 523 N.E.2d 573; *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 299, 483 N.E.2d 1229, 1235.) The payment of attorney fees is the primary obligation of the party on whose behalf the services are rendered. (*In re Marriage of Kaplan* (1986), 149 Ill. App. 3d 23, 34, 500 N.E.2d 612; *In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 411 N.E.2d 947.) Whether an award of attorney fees is proper depends upon a showing of the party seeking them of an inability to pay and the ability of the other spouse to pay fees. *In re Marriage of Pahlke* (1987), 154 Ill. App. 3d 256, 263, 507 N.E.2d 71; *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 299-300, 483 N.E.2d 1229, 1235.

A party can request a hearing on attorney fees and is entitled to

1010

an opportunity to present evidence in support of his request. (*Kaufman v. Kaufman* (1974), 22 Ill. App. 3d 1045, 1051, 318 N.E.2d 282.) However, where a party does not request a hearing on his inability to pay or the wife's ability to pay, he has waived his right to a hearing (*In re Marriage of Lord* (1984), 125 Ill. App. 3d 1, 6-7, 465 N.E.2d 151; *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 466, 426 N.E.2d 1087), and the judge may award attorney fees based on the pleadings, affidavits on file and on his own experience. (*Kaufman v. Kaufman* (1974), 22 Ill. App. 3d 1045, 1051, 318 N.E.2d 282.) Alan has sufficient assets to pay for his attorney fees. Therefore, we do not find an abuse of discretion in the trial court requiring Alan to pay his own attorney fees.

Accordingly, for the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

CAMPBELL and O'CONNOR, JJ., concur.