**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250130-U

Order filed January 30, 2026

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| MAX HU, | ) | Du Page County, Illinois, |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | Appeal No. 3-25-0130 |
| and | ) | Circuit No. 23-DC-243 |
| | ) | |
| XIAOWEI YING, | ) | Honorable |
| | ) | Robert E. Douglas, |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE PETERSON delivered the judgment of the court.
Justices Brennan and Bertani concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Appellant forfeited the issue regarding the disproportionate distribution of the child's expenses. The court did not abuse its discretion in the distribution of marital assets. The court's determination that a retirement account was marital property was not against the manifest weight of the evidence. We are unable to properly review the remaining issues due to the court's failure to make adequate findings.

¶ 2    Petitioner, Max Hu, appeals the Du Page County circuit court's judgment of dissolution.

He argues that the court erred by: (1) ordering the parties to pay a disproportionate share of the

child's expenses; (2) awarding respondent, Xiaowei Ying, 60% of the marital assets without making any findings regarding the disproportionate division; (3) ordering Hu to pay Ying $10,800 rather than reimbursing the marital estate and apportioning those funds equally; (4) classifying a retirement account as marital property and dividing it without making statutorily required findings; and (5) ordering Hu to deposit $55,957 into an account before disproportionately dividing the account without making any statutorily required findings. We affirm in part, vacate in part, and remand for further proceedings.

## I. BACKGROUND

¶ 4 The parties were married in February 2018. One child, B.H., was born into the marriage in 2022. Hu petitioned for dissolution of marriage in March 2023, and Ying filed a counter-petition for dissolution of marriage the next month. During the course of the proceedings, the court entered an order setting temporary child support, providing for the child's out-of-pocket expenses to be divided, 60% paid by Hu and 40% paid by Ying. The order also provided that, until a parental allocation judgment was entered, Ying was responsible for day care costs. Pursuant to the parties' agreement, a parental allocation judgment regarding parental responsibilities and a parenting plan were entered on January 27, 2025. That same day, the matter proceeded to trial on the remaining issues.

¶ 5 Hu testified that he was 36 years old. He worked as a portfolio manager with an annual salary of $135,050. Hu also received bonuses. Additionally, Hu received a salary from a real estate holding/property management company he started prior to the marriage. Hu's gross monthly income, according to his 2023 financial affidavit, was $17,704.08. Hu testified that he opened a Merrill Edge IRA account ending 9G21 in 2019. He opened the account with $27,000 from his employment with Bank of China. About $18,000 of the funds were earned prior to the

marriage. Hu conceded that the difference between the approximately $27,000 account balance and the $18,000 earned prior to the marriage was marital funds. Hu deposited $6,000 of marital funds into the account based on Ying's advice, but a few months later he removed the $6,000 from the account due to potential tax consequences. Hu testified regarding his nonmarital assets, including real property, business interests, and investment accounts.

¶ 6        Ying testified that she was 33 years old. In 2025, Ying's base salary was $85,280. She received a bonus of $1,500 the previous year. Ying did not testify as to any nonmarital assets.

¶ 7        Both parties testified regarding various financial information, including their bank accounts, retirement accounts, expenditures, and deposits and withdrawals in various accounts. Additionally, numerous financial documents were admitted into evidence. Hu's financial affidavit, which was admitted into evidence, showed that he earned $17,704.08 per month, which equals $212,448.96 per year.

¶ 8        Following the trial, the parties were to submit written closing arguments. The record does not contain written closing arguments from either party. The court did not make oral findings but entered a written judgment of dissolution. The court found that Hu earned $212,448 annually and Ying earned $87,487 annually. The court ordered Hu to pay $1,499.13 per month in child support. The court also ordered that childcare expenses, educational expenses, and expenses for activities were to be paid on a 60/40 basis in Ying's favor. The court ordered that the flexible spending account and health savings account be utilized to offset the parties' respective obligations on a 60/40 basis in Ying's favor. Hu was also ordered to pay $1443 per month in maintenance for a period of 14.5 months. The court split the "marital benefits accrued" through marital retirement and/or investment accounts 60/40 in favor of Ying, except for the Merrill Edge IRA account ending 9G21, which the court split 50/50 between the parties. The court

3

ordered that Hu was to receive 40% of the equity in real estate held in Ying's name, which was determined to be marital property. The court split the Chase marital accounts, one in each party's name, 60/40 in favor of Ying. However, it also ordered Hu to reimburse the account in his name $55,957 prior to the division. Hu was also ordered to reimburse Ying $10,800 in marital funds he deposited into his Bank of America account ending 4188. The court's order did not analyze any statutory factors in making its property distribution. The court's order did not provide a reason for the reimbursements it ordered Hu to make. Hu appeals.

¶ 9                                    II. ANALYSIS

¶ 10        Hu first argues that the trial court failed to follow section 505(a)(3.7)(B) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 505(a)(3.7)(B) (West 2024)) when it ordered a disproportionate division of the child's expenses. Hu argues that considering the maintenance ($1443) and child support ($1499.13) that he pays and Ying receives, their net incomes per month are essentially equal and thus, the division of expenses should be equal. He argues that Ying's monthly net income is $9,462.88 with support and maintenance, and his is $9,042 after paying support and maintenance.

¶ 11        Here, Hu fails to cite where in the record he obtained the figures he provides for each party's net income. The failure is a violation of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) (providing that argument must "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"). Additionally, Hu fails to explain how the court's ruling does not comport with section 505(a)(3.7)(B). See *e.g.*, *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993) ("A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented [citation], and it is not a repository into which an appellant may foist the burden of

4

argument and research."). Moreover, Hu fails to cite any other authority in support of his argument. See *id.*; Ill. Sup. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Due to Hu's failures in this regard, we consider this issue forfeited, decline to consider this issue on the merits, and affirm the court's division of expenses. See *e.g.*, *In re Marriage of Lugo*, 2025 IL App 231478, ¶ 82 (deeming an issue forfeited where the party cited "nothing in the record to support her contention" and "presented nothing in support of her argument").

¶ 12        Hu next argues that the court erred by awarding Ying 60% of the marital assets and by failing to make any findings with regard to the disproportionate division of the estate. This court will not reverse a trial court's division of marital assets absent an abuse of discretion. *In re Marriage of Roberts*, 2015 IL App (3d) 140263, ¶ 13. "An abuse of discretion occurs when no reasonable person would take the view adopted by the trial court." *Id.* The court "shall divide the marital property *** in just proportions considering all relevant factors ***." 750 ILCS 5/503(d) (West 2024). Section 503(d) of the Act enumerates various factors for the court to consider. *Id.* The distribution of assets must be equitable, not necessarily equal. *Roberts*, 2015 IL App (3d) 140263, ¶ 12. A trial court should make specific findings regarding the relevant factors, "[h]owever, where the record adequately provides a basis for a reviewing court to determine the propriety of the decision and the decision is supported by the evidence, the trial court will not be reversed solely because the record does not contain specific findings." *In re Marriage of Wolf*, 180 Ill. App. 3d 998, 1006 (1989).

¶ 13        Here, we cannot say that the court abused its discretion in dividing the majority of the marital assets 60% in Ying's favor. The evidence at trial and the findings by the court showed that Hu earned a substantially higher income than Ying. Additionally, testimony at trial

5

established that Hu had various nonmarital assets,[1] unlike Ying. Based on these facts, it was not an abuse of discretion for the court to provide Ying with more of the marital assets than Hu. See *Roberts*, 2015 IL App (3d) 140263, ¶ 13 ("An abuse of discretion occurs when no reasonable person would take the view adopted by the trial court."). Thus, we affirm the court's determination to split the majority of the marital assets 60% in Ying's favor.

¶ 14      Hu further argues that the court erred by determining that his Merrill Edge retirement account ending 9G21 was marital and therefore erred in dividing that account. Specifically, he argues that he did not put Ying's name on the account or take any actions that could lead the court to determine the account was transmuted into marital property. Hu argues that although he put $6,000 in marital funds into the account, he quickly removed those funds. He argues that he testified that he had the account prior to the marriage and that he opened it when he changed jobs.

¶ 15      Property acquired after marriage, but before dissolution, is presumed to be marital property. 750 ILCS 5/503(b)(1) (West 2024). Contrary to his argument in his brief, the record indicates that Hu unequivocally testified that he opened the account in 2019, which was after the marriage. Therefore, the account is presumed to be marital property, and Hu failed to rebut this presumption. On appeal, he fails to make any argument that the account falls into one of the exceptions to the rule that property acquired after marriage is marital. In his reply he argues that the account was opened with $27,000 in nonmarital funds, which would seem to be an attempt to argue that the account was "property acquired in exchange for property acquired before the marriage," or simply, property acquired before marriage. See 750 ILCS 5/503(a)(2), (6) (West

---

[1]These assets appear to have a fair market value well over a million dollars according to Hu's financial affidavit that was admitted into evidence at trial.

6

2024). However, Hu testified at trial that a portion of the funds used to open the account were marital funds. Therefore, we cannot say that the court's classification of the account as marital was against the manifest weight of the evidence.[2] See *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 669 (2008) (providing that a court's classification of property as marital or nonmarital will not be reversed unless it is against the manifest weight of the evidence).

¶ 16    Hu also argues that the court erred when it ordered the sum of $10,800 to be paid directly to Ying, rather than reimbursing the marital estate and then apportioning those funds between the parties. Hu does not dispute that $10,800 in marital funds deposited into his nonmarital account ending 4188 should be reimbursed to the marital estate but argues the funds should be divided between the parties rather than paid in full to Ying. Ying argues that the court did not find that $10,800 was the total of the funds that Hu diverted to the account ending 4188. She further argues that Hu testified that he did not know where numerous deposits, totaling over $148,000, into his nonmarital account ending 4188 originated, such that it is likely Hu diverted much more than $10,800. Ying further argues that Hu failed to demonstrate error in the court's decision, and he only summarily states the decision was against the manifest weight of the evidence.

¶ 17    Section 503(c)(2)(A) of the Act provides that "[w]hen one estate of property makes a contribution to another estate of property, the contributing estate shall be reimbursed from the estate receiving the contribution ***." 750 ILCS 503(c)(2)(A) (West 2024). Here, the parties

---

[2]We further note that, although not argued by either party, section 503(a)(6) of the Act specifically states that property acquired before the marriage is nonmarital, "except as it relates to retirement plans that may have both marital and non-marital characteristics" and section 503(b)(2) of the Act provides that individual retirement accounts acquired by or participated in after the marriage are presumed to be marital. 750 ILCS 5/503(a)(6), (b)(2) (West 2024). Hu failed to rebut this presumption. Further, while we acknowledge that section 503(c)(2)(A) of the Act, (*id.* § 503(c)(2)(A)), provides for reimbursement when one estate contributes to another, and that is arguably what happened with this account, Hu did not make any such argument on appeal and instead simply argued that the account was his nonmarital property. Thus, we do not address whether there should have been some reimbursement to Hu from this account.

7

seem to agree that the marital estate contributed funds to Hu's account ending 4188, as marital funds had been deposited into that account. Thus, the marital estate should be reimbursed. However, it is unclear how much money from the marital estate was deposited into the nonmarital account, as the court made no findings in this regard. If the court found that there was more than $10,800 of marital funds deposited into Hu's account, then it may be proper for the court to have ordered Hu to pay $10,800 directly to Ying. However, if that was the total amount of marital funds that the court found were deposited into Hu's account, then it would appear that the amount should have been reimbursed to the marital estate, which the court largely divided, 60% in favor of Ying. Without any findings by the trial court in regard to how it determined this amount or why it ordered the amount paid directly to Ying, we cannot determine the propriety of ordering Hu to pay the amount directly to Ying. Therefore, we vacate that portion of the judgment ordering Hu to pay Ying $10,800 in marital funds he deposited into his account ending 4188, and we remand for further proceedings. If the court again orders such payment, it must set forth specific findings supporting its decision.

¶ 18       Lastly, Hu argues that the court erred by ordering him to deposit $55,957 into his Chase account before the account was divided. He further argues that the court made no findings in regard to this order, and that the court's decision was against the manifest weight of the evidence. Specifically, he argues that the court provided no reason or rationale for the reimbursement, and that there was no evidence regarding this amount of money being improperly spent on a nonmarital purpose. Ying argues that Hu testified regarding various withdrawals from the Chase account, totaling almost $100,000 from December 2023 to November 2024. She argues that the withdrawals were for payments to credit cards Hu did not identify a year's worth of mortgage payments on his nonmarital residence, payment of real estate

taxes for that residence, payments for repairs to that residence, payments for nonmarital business interests, and payment of court-ordered child support.

¶ 19    As stated above, section 503(c)(2)(A) of the Act provides that "[w]hen one estate of property makes a contribution to another estate of property, the contributing estate shall be reimbursed from the estate receiving the contribution ***." 750 ILCS 503(c)(2)(A) (West 2024). If Hu was contributing marital funds to his nonmarital property, then the marital estate should be reimbursed. However, the court made no specific findings prior to ordering the reimbursement. Although the court is not always required to make findings, we conclude that this court is unable to review the propriety of the court's order in this regard without findings by the court providing a basis for its decision. *Cf. In re Marriage of Wolf*, 180 Ill. App. 3d 998, 1006 (1989) (providing that "where the record adequately provides a basis for a reviewing court to determine the propriety of the decision and the decision is supported by the evidence, the trial court will not be reversed solely because the record does not contain specific findings"). Thus, we vacate that portion of the judgment requiring Hu to reimburse $55,957 to his Chase account ending 0292 prior to its division and remand the matter for further proceedings. If the court again orders such reimbursement, it must set forth specific findings supporting that order.

¶ 20                                III. CONCLUSION

¶ 21    The judgment of the circuit court of Du Page County is affirmed in part, vacated in part, and the matter remanded for further proceedings.

¶ 22    Affirmed in part and vacated in part.

¶ 23    Cause remanded.

9