*In re* MARRIAGE OF ERNA TOTH, Petitioner-Appellee, and TAMAS TOTH, Respondent-Appellant.

First District (5th Division)   No. 1—90—0324

Opinion filed December 20, 1991.—Rehearing denied January 31, 1992.

Diane M. Bruzas, of Chicago, for appellant.

Ilene E. Shapiro, and Carroll A. Barry, of Feinberg & Barry, P.C., both of Chicago, for appellee.

JUSTICE McNULTY delivered the opinion of the court:

On December 28, 1989, the trial court entered a judgment for dissolution of marriage of Erna Toth and Tamas Toth. Tamas appeals that portion of the judgment that relates to the award of maintenance and the distribution of property. The issues presented on appeal are whether the trial court properly (1) determined that Erna did not dissipate marital assets; (2) awarded maintenance to Erna; and (3) awarded Erna exclusive possession of the marital residence.

Erna and Tamas were married on May 21, 1966. No children were born to or adopted by them. At the time of trial Erna was 61 years of age. She had been employed by the Chicago Northwestern Transportation Company for 42 years. Erna injured her back in 1987, while exiting a train, but the accident did not affect her job performance and she never requested light duty because of her injury. At the time of trial, the lawsuit she filed against the Northeastern Illinois Regional Commuter Corporation as a result of her back injury was still pending. In 1988, Erna earned a gross income of $29,182 and her gross earnings for the first five months of 1989 were $13,381.53. Erna's amended affidavit of expenses reflected monthly expenses of approximately $2,200. Erna testified that she is eligible for retirement from her job with the Chicago Northwestern Transportation Company when she reaches age 62 and plans to retire at that time. She expects to receive around $1,200-per-month income from her pension when she retires. She has no plans for employment after retirement. Erna suffers from osteoporosis and arthritis in her knees but does not take any prescribed medication from any physician for either ailment.

Tamas, at the time of trial, was 49 years of age and had been employed by Delta Airlines as an auto mechanic and auto body repairman since January 3, 1966. Tamas considers his health fairly good for his age, but suffers from a medical condition known as ankylosis spondylitis which has caused a deformity of his spine that has limited his spine and neck mobility. Tamas is under the care of a physician and has been taking a prescribed medication known as Indocin since 1979 for his condition. Tamas testified that as a result of his medical condition, he performs light duty work when such work is available. Tamas earned approximately $40,190 gross income in the year 1988 and received the same salary in 1989.

The parties lived together at the marital residence from the date of their marriage in May 1966, until January 1986, when Ta-

mas vacated the premises. Erna testified that from January 1983 to January 1985, Tamas was not living at the marital residence on a full-time basis and only spent the night on occasion. A stipulation admitted at trial shows that the parties' marital assets included the marital residence valued at $92,000 to $108,000, Delta Airlines savings plan valued at $23,147, Delta Airlines stock valued at $24,525, Chicago Northwestern stock valued at $14,475, an IRA account valued at $10,849, Delta Airlines credit pension plan valued at $22,788, Chicago & Northwestern pension plan valued at $59,177, Paine-Weber accounts/Dome Mining stock valued at $925, United States Savings Bonds valued at $9,878 and Chicago Northwestern credit union account valued at $11,415.

Erna admitted at trial that she liquidated the following assets. In December 1983, Erna withdrew $11,415 from her credit union account. Erna received $925 from the Paine-Weber account she liquidated in July 1983 and $9,130 in 1984 from the IRA account. Also in 1984, Erna received $9,878 from the liquidation of United States Savings Bonds. She received $10,000 from the liquidation of ten $1,000 certificates of deposit at Columbia National Bank. She also withdrew the sum of $5,005 from her savings account at Columbia National Bank.

On December 28, 1989, the trial court entered a judgment for dissolution of marriage between the parties, which included the following findings:

1. That marital and nonmarital assets were under Erna's control and the monies spent by Erna were not distinguishable as marital and nonmarital property.

2. That the funds spent by Erna were not dissipation of assets by Erna.

3. That "[Erna] spent $17,049 and an additional $5,000 paid to the Internal Revenue Service from 1983 to the present to supplement [sic] her income."

4. That there was no nonmarital property now in existence, other than a portion of Erna's pension.

The trial court stated that "there is no finding that the Court approves the accounting essence and spending practice of [Erna]." The court made a further finding that the value of the marital residence was $105,000 and that the value of respondent's tools was $2,000. The court awarded Erna the nonmarital portion of her Chicago & Northwestern pension valued at $51,459. The court awarded $141,774 in marital property to Erna and $124,960 to Tamas.

In addition, the court awarded Erna the sum of $350 per month as periodic maintenance to be reviewed in four years or sooner if either of the parties has a substantial change in circumstances. In addition, the court awarded Erna exclusive possession of the marital residence for four years after the entry of the judgment for dissolution. The court reserved jurisdiction as to the division of the proceeds as to Erna's pending personal injury action against the Northeastern Illinois Regional Commuter Corporation.

Before addressing the merits of Tamas' appeal, we must first consider Erna's contention that we have no jurisdiction to hear this appeal. It is Erna's contention that because the trial court reserved jurisdiction over the disposition of any recovery which Erna may receive from her pending personal injury suit, the judgment for dissolution of marriage was not a final and appealable order and Tamas' appeal must therefore be dismissed. In support of her contention, Erna relies on *In re Marriage of Leopando* (1983), 96 Ill. 2d 114, 449 N.E.2d 137, in which the trial court entered an order dissolving the parties' marriage and adjudicating the issue of permanent custody, but reserved for future consideration the issues of maintenance, property division and attorney fees. The supreme court in *Leopando* held that the order was not final and appealable since it failed to adjudicate all of the issues ancillary to the parties' divorce. (*Leopando*, 96 Ill. 2d at 120, 449 N.E.2d at 140.) It is thus well settled that in a dissolution of marriage case, issues concerning property disposition or division are not separate claims, but instead, they are related, ancillary parts of a single petition for dissolution.

In applying the decision in *Leopando*, courts consider whether the public policy against fragmented litigation would be significantly undercut by granting finality to the judgment. In *In re Marriage of Lord* (1984), 125 Ill. App. 3d 1, 465 N.E.2d 151, the trial court entered an order of dissolution of marriage and reserved jurisdiction for two years on the issue of whether to award maintenance to the wife who had symptoms of Raynaud's disease that might develop into a disabling disease. In determining that the order was final and appealable, the court stated that the public policy against piecemeal litigation would not be significantly impacted by granting finality to the judgment since the reservation of maintenance was due to legitimate concern for the wife which could not be handled in any other manner and that it was unfair to delay husband's right to appeal until expiration of the reserved time. Of additional importance to the court in *Lord* was the fact that only one issue was reserved,

where in *Leopando* only one issue was resolved. *Lord,* 125 Ill. App. 3d at 4, 456 N.E.2d at 153.

■ We likewise find that the judgment for dissolution in the instant case was final and appealable despite the court's reservation of jurisdiction over the issue of Erna's pending personal injury suit. In fact, to delay Tamas' right to appeal until the resolution of Erna's personal injury suit would be even more unfair here than in *Lord.* While in *Lord* the court reserved jurisdiction for two years, the court here reserved jurisdiction until some uncertain time—the resolution of Erna's personal injury action. In addition, while Erna is required by the judgment of dissolution to inform Tamas if she receives a settlement or award from her lawsuit, she is not required to inform Tamas if she recovers no money from her lawsuit. Tamas would thus not only be forced to forego his right to appeal for some indefinite time, but if Erna does not succeed in her lawsuit, Tamas would not even become aware of his right to then appeal from the judgment for dissolution. Accordingly, since the trial court resolved all issues that could have been decided at the time of judgment, and reserved jurisdiction over only the one issue which could not have been resolved at that time, there is no public policy violation in finding the judgment final and appealable. We therefore address the issues raised by Tamas on appeal.

Tamas' first argument on appeal is that the trial court erred in determining that Erna had not dissipated marital assets. Dissipation occurs when one spouse uses marital property for his or her own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown. (*In re Marriage of Partyka* (1987), 158 Ill. App. 3d 545, 511 N.E.2d 676.) Once it is established that a party has liquidated marital assets, the party charged with the dissipation must establish by clear and convincing evidence how the funds were spent. (*Partyka,* 158 Ill. App. 3d at 549-50, 511 N.E.2d 676, 680.) General and vague statements that they were spent on marital expenses or bills are inadequate to avoid a finding of dissipation. (*Partyka,* 158 Ill. App. 3d at 550, 511 N.E.2d at 680.) Where a party has dissipated marital assets, the court may charge the amount dissipated against his or her share of the marital property so as to compensate the other party. *In re Marriage of Block* (1982), 110 Ill. App. 3d 864, 441 N.E.2d 1283.

Upon review, the trial court's division of property will be disturbed only upon a showing of abuse of discretion. (*In re Marriage of Rothbardt* (1981), 99 Ill. App. 3d 561, 425 N.E.2d 1146.) The determination of an abuse of discretion does not turn upon whether

the reviewing court agrees with the trial court's distribution of assets, but whether the trial court acted arbitrarily without employment of conscientious judgment. *In re Marriage of Legge* (1982), 111 Ill. App. 3d 198, 443 N.E.2d 1089.

Tamas maintains that Erna dissipated $46,353 of marital assets. The funds claimed to have been dissipated by Erna were: (1) her credit union account which she closed in December of 1983 from which she received $11,415; (2) various savings bonds cashed in from which she obtained proceeds of $9,878 on August 9, 1984; (3) Dome Mining stock held in a Paine-Weber brokerage account which she liquidated and received proceeds of approximately $925; (4) her IRA accounts which she liquidated in 1984 from which she received $9,130; (5) ten $1,000 certificates of deposit cashed in by Erna in 1984; and (6) $5,005 Erna withdrew from Columbia National Bank on July 31, 1982.

It is undisputed that in November 1983, the parties had an altercation in the course of which Tamas became physically violent towards Erna and struck her in her face. Erna testified that Tamas had threatened to kill her and, for the purpose of self-protection, she immediately left the marital home. It was at this time that Erna liquidated the assets, she contends, so as to provide her with cash in case of an emergency.

Erna testified that she intermingled the funds from the various sources and utilized them to pay various living expenses on an "as needed basis." She testified that when she fled her home, she left with only the clothes on her back. Erna therefore claims that she used some of the liquidated assets to purchase a new winter wardrobe. However, she did not have any receipts for her purchases. In addition Erna testified that she paid approximately $1,200 to her brother for rent and food. She was also unable to provide any documentation or receipt as to this transaction. She did produce documentation as to the expenditure of $2,000 to pay a dental bill and $600 for the purchase of a thermopane window. She also testified as to having her garage roof replaced although the record is devoid of any evidence regarding the cost. Erna also testified to using the liquidated assets to pay her divorce attorney $12,000 and she expended $5,000 of the proceeds to pay the additional income tax she incurred from liquidating her IRA accounts before reaching retirement age. Erna maintained that she spent the rest of the money on living expenses although she was unable to provide any documentation or records as to specifically how the funds were used.

■ It is clear that Erna did not dissipate the $5,005 that she withdrew from her savings account at the Columbia National Bank since this was undisputably nonmarital property and any expenditure of nonmarital property, by definition, cannot constitute dissipation of marital property. Of the remaining $41,348 Tamas alleges that Erna dissipated, she is only able to account for $21,000 of expenditures and $12,000 of this amount was spent on her legal fees. Expenditures for attorney fees out of marital assets is a dissipation of marital assets, and even Erna admits that the fees paid to her divorce attorney were an expenditure for a purpose unrelated to marriage. (*In re Marriage of Head* (1988), 168 Ill. App. 3d 697, 523 N.E.2d 17.) Furthermore, as previously noted, vague and unsupported statements are inadequate to avoid a dissipation finding. In *In re Marriage of Los* (1985), 136 Ill. App. 3d 26, 482 N.E.2d 1022, the husband testified that he used the funds for "his cost of living and his bills." The court held that the failure to explain specifically how this money was spent required a finding of dissipation. (See also *In re Marriage of Partyka* (1987), 158 Ill. App. 3d 545, 511 N.E.2d 676 (husband's testimony that he spent marital funds "to live on and to pay bills" was inadequate to avoid a finding of dissipation); *In re Marriage of Smith* (1984), 128 Ill. App. 3d 1017, 471 N.E.2d 1008 (husband's testimony that he used funds "to pay bills" but could not recall which bills he had paid and which he had not, warranted a finding that husband had improperly spent the funds).) Here, however, although Erna has not provided documentation as to all of her expenditures, it is clear that during her separation from Tamas, she did not seek temporary maintenance from him because she was able to pay her bills from cash received from the liquidated assets.

Furthermore, any dissipation of assets in the instant case does not require this case to be reversed since the evidence also shows that Tamas dissipated marital assets. The record reflects that from January 1983 to January 1985, Tamas was not living at the marital residence. Tamas admitted that during his absence from the marital residence, he spent marital assets on his girl friend. Tamas did in fact admit that during the two-year period, he and his girl friend dined out and purchased food jointly. Tamas also admitted to paying for a hotel room when he and his girl friend went to Florida for a weekend. Furthermore, Tamas admitted to lending his girl friend $500. The record is unclear as to whether his girl friend ever paid him back. Although the record reveals that in 1984, Tamas made four monthly rental payments on an apartment of $125 each, Tamas

incredibly claims that these payments were not for himself or for his girl friend, but were for his friend, "Mike."

Accordingly, since there is evidence of dissipation of marital assets by both parties, we find no error in the trial court's distribution of marital assets.

The next issue raised on appeal by Tamas is that the trial court erred when it awarded to Erna maintenance of $350 per month. An award of maintenance rests within the sound discretion of the trial court, and the court's decision will not be disturbed on review unless it amounts to an abuse of discretion or is against the manifest weight of the evidence. (*In re Marriage of Heller* (1987), 153 Ill. App. 3d 224, 505 N.E.2d 1294.) Section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 504(a)) provides that a court is to award maintenance only if it finds that the party seeking maintenance lacks sufficient property, including marital property, to provide for her reasonable needs, is unable to support herself through appropriate employment, or is otherwise without sufficient income. In determining the amount and duration of an award of maintenance, the court should consider such factors as the standard of living established in the marriage, the duration of the marriage, the age and the physical condition of both parties, and the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance. Ill. Rev. Stat. 1989, ch. 40, par. 504(b).

The record in the instant case reveals that the trial court did not abuse its discretion in awarding Erna maintenance of $350 per month. The record reveals that Erna was 61 years of age at the time of trial and was earning $29,182.63 a year. In addition, Erna was a year away from retirement and suffers from chronic health problems. For these reasons, it is clear that Erna has dismal prospects to increase her income or acquire capital assets in the future. Tamas, on the other hand, was age 49 at the time of trial and, being 12 years younger than Erna, has more income-producing years ahead of him. In addition, Tamas earns $40,000 per year, over $10,000 per year more than Erna. Based on these facts, the maintenance award to Erna of $350 per month reviewable in four years should be affirmed as a proper exercise of discretion. In reviewing the maintenance award in four years, the court will have the opportunity to determine how Erna's retirement as well as her personal injury lawsuit affect Erna's need for maintenance.

Lastly, Tamas maintains that the trial court erred when it awarded to Erna exclusive possession of the marital residence. Ta-

mas contends that although section 503(d)(4) recognizes the "desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children," the Act provides no specific authority to award exclusive possession to a spouse, as in this case, where there are no minor children. Ill. Rev. Stat. 1985, ch. 40, par. 503(d)(4).

■ Tamas' contention is without merit. Courts have found that a spouse may be awarded exclusive possession of the marital residence even when there are no minor children. The reasonableness of such awards is determined by considering the totality of the economic circumstances of the parties. (*In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 453 N.E.2d 748 (award of exclusive possession of the home to wife was reasonable where wife had been unemployed for 32 years and suffered from arthritis, and husband was employed and in good health); *In re Marriage of Lukas* (1980), 83 Ill. App. 3d 606, 404 N.E.2d 545 (award of exclusive possession to wife was reasonable where wife was unemployed and in poor health and husband was in good health and employed).) Considering the totality of the circumstances in the instant case, the trial court did not act unreasonably in awarding Erna exclusive possession of the marital residence for a period of four years. Erna's opportunity to increase her income was limited in light of the fact that at the time of trial she was 61 years old and planned to retire in one year. She suffered from chronic medical problems including arthritis and osteoporosis. While Tamas also testified to having health problems, these problems have not substantially affected his employment. Accordingly, the trial court's decision awarding Erna exclusive possession of the marital residence for a period of four years was a proper exercise of discretion.

Affirmed.

LORENZ, P.J., and MURRAY, J., concur.